**PROMISSORY NOTE**

$1,050,000.00 December 1, 2016

FOR VALUE RECEIVED, the undersigned promises to pay to the order of NEWLIGHT HEALTHCARE, LLC, a Texas limited liability company (herein called "Lender"), the principal sum of ONE MILLION FIFTY THOUSAND AND NO/100 DOLLARS ($1,050,000.00), or, if less, the total of advances made hereon, together with interest in accordance with the terms and conditions herein.

Subject to the terms and conditions of this Promissory Note (this "Note"), the unpaid principal balance outstanding under this Note from time to time shall bear interest from the date of this Note and thereafter at the rate of nine and three quarters of one percent (9.75%) per annum. Interest accruing hereunder shall be computed on the basis of a 360-day year, and shall be assessed for the actual number of days elapsed. Payments under this Note shall be first applied to accrued and unpaid interest hereunder and the balance, if any, to principal.

On December 1, 2017 (the "Maturity Date"), the undersigned shall pay the unpaid principal balance of this Note plus all accrued and unpaid interest on the unpaid principal balance of this Note. Except as provided in the following paragraph, no payment shall be due prior to the Maturity Date.

Notwithstanding the foregoing, upon the undersigned's receipt of any moneys for Medicare or Medicaid Electronic Health Record Stimulus or any cost report settlements (including any re-openings of prior cost reports), the undersigned shall immediately pay such amounts on this Note, which shall first be applied to any accrued and unpaid interest and then to the unpaid principal balance of this Note.

The undersigned has the right to prepay, without penalty, at any time and from time to time prior to maturity, all or any part of the unpaid principal balance of this Note and all or any part of the unpaid interest accrued to the date of such prepayment, provided that any such principal thus paid is accompanied by accrued interest on such principal, if any. Any partial prepayments of principal shall be applied to installments thereof in the inverse order of maturity.

From and after the occurrence of any Default (as defined below), and so long as any such Default remains unremedied or uncured thereafter, the Indebtedness (as defined below) outstanding under this Note shall bear interest at a per annum rate of three percent (3%) above the otherwise Applicable Interest Rate, which interest shall be payable upon demand. In addition to the foregoing, a late payment charge equal to five percent (5%) of each late payment hereunder may be charged on any payment not received by Lender within ten (10) calendar days after the payment due date therefor, but acceptance of payment of any such charge shall not constitute a waiver of any Default hereunder.

In no event shall the interest contracted for, charged, taken, reserved or received under this Note at any time exceed the Maximum Rate. The term "Maximum Rate", as used herein, shall mean at the particular time in question the maximum nonusurious rate of interest which,

under applicable law, may then be charged on this Note. If on any day the Applicable Interest Rate hereunder in respect of any Indebtedness under this Note shall exceed the Maximum Rate for that day, the rate of interest applicable to such Indebtedness shall be fixed at the Maximum Rate on that day and on each day thereafter until the total amount of interest accrued on the unpaid principal balance of this Note and Indebtedness equals the total amount of interest which would have accrued if there had been no Maximum Rate. If such maximum rate of interest changes after the date hereof, the Maximum Rate shall be automatically increased or decreased, as the case may be, without notice to the undersigned from time to time as of the effective date of each change in such maximum rate. For purposes of determining the Maximum Rate under the law of the State of Texas, the applicable interest rate ceiling shall be the "weekly ceiling" from time to time in effect under Chapter 303 of the Texas Finance Code, as amended.

The amount from time to time outstanding under this Note, the Applicable Interest Rate, and the amount and date of any repayment shall be noted on Lender's records, which records shall be conclusive evidence thereof, absent manifest error; provided, however, any failure by Lender to make any such notation, or any error in any such notation, shall not relieve the undersigned of its/their obligations to repay Lender all amounts payable by the undersigned to Lender under or pursuant to this Note, when due in accordance with the terms hereof.

In the event that any payment under this Note becomes due and payable on any day which is not a Business Day, the due date thereof shall be extended to the next succeeding Business Day, and, to the extent applicable, interest shall continue to accrue and be payable thereon during such extension at the rates set forth in this Note.

All payments to be made by the undersigned to Lender under or pursuant to this Note shall be in immediately available United States funds, without setoff or counterclaim, and in the event that any payments submitted hereunder are in funds not available until collected, said payments shall continue to bear interest until collected.

If any Change in Law: (a) shall subject Lender to any tax, duty or other charge with respect to this Note or any Indebtedness hereunder, or shall change the basis of taxation of payments to Lender of the principal of or interest under this Note or any other amounts due under this Note in respect thereof (except for changes in the rate of tax on the overall net income of Lender imposed by the jurisdiction in which Lender's principal executive office is located); or (b) shall impose, modify or deem applicable any reserve (including, without limitation, any imposed by the Board of Governors of the Federal Reserve System), special deposit or similar requirement against assets of, deposits with or for the account of, or credit extended by Lender, or shall impose on Lender or the foreign exchange and interbank markets any other condition affecting this Note or the Indebtedness hereunder; and the result of any of the foregoing is to increase the cost to Lender of maintaining any part of the Indebtedness hereunder or to reduce the amount of any sum received or receivable by Lender under this Note by an amount deemed by Lender to be material, then the undersigned shall pay to Lender, within fifteen (15) days of the undersigned's receipt of written notice from Lender demanding such compensation, such additional amount or amounts as will compensate Lender for such increased cost or reduction. A certificate of Lender, prepared in good faith and in reasonable detail by Lender and submitted by Lender to the undersigned, setting forth the basis for determining such additional amount or

amounts necessary to compensate Lender shall be conclusive and binding for all purposes, absent manifest error.

In the event that any Change in Law affects or would affect the amount of capital required or expected to be maintained by Lender (or any corporation controlling Lender), and Lender determines that the amount of such capital is increased by or based upon the existence of any obligations of Lender hereunder or the maintaining of any Indebtedness hereunder, and such increase has the effect of reducing the rate of return on Lender's (or such controlling corporation's) capital as a consequence of such obligations or the maintaining of such Indebtedness hereunder to a level below that which Lender (or such controlling corporation) could have achieved but for such circumstances (taking into consideration its policies with respect to capital adequacy), then the undersigned shall pay to Lender, within fifteen (15) days of the undersigned's receipt of written notice from Lender demanding such compensation, additional amounts as are sufficient to compensate Lender (or such controlling corporation) for any increase in the amount of capital and reduced rate of return which Lender reasonably determines to be allocable to the existence of any obligations of Lender hereunder or to maintaining any Indebtedness hereunder. A certificate of Lender as to the amount of such compensation, prepared in good faith and in reasonable detail by Lender and submitted by Lender to the undersigned, shall be conclusive and binding for all purposes absent manifest error.

This Note and any other Indebtedness and liabilities of any kind of the undersigned (or any of them) to Lender, and any and all modifications, renewals or extensions of it, whether joint or several, contingent or absolute, now existing or later arising, and however evidenced and whether incurred voluntarily or involuntarily, known or unknown, or originally payable to Lender or to a third party and subsequently acquired by Lender including, without limitation, any late charges; loan fees or charges; costs incurred by Lender in establishing, determining, continuing or defending the validity or priority of any security interest, pledge or other lien or in pursuing any of its rights or remedies under any loan document (or otherwise) or in connection with any proceeding involving Lender as a result of any financial accommodation to the undersigned (or any of them); and reasonable costs and expenses of attorneys and paralegals, whether inside or outside counsel is used, and whether any suit or other action is instituted, and to court costs if suit or action is instituted, and whether any such fees, costs or expenses are incurred at the trial court level or on appeal, in bankruptcy, in administrative proceedings, in probate proceedings or otherwise (collectively "Indebtedness") are secured by the security interest and liens granted to Lender in that certain Security Agreement dated October 3, 2016 (as amended, the "Security Agreement") by and among Borrower, Lender, and LTC Group, LLC, as amended by that certain First Amendment to Security Agreement (the "Security Agreement Amendment") dated of even date herewith, such security interest and liens being perfected by filing that certain UCC Financing Statement with the County Clerk of Oklahoma County on October 12, 2016, under Document No. 2016012021050490, as amended or supplemented pursuant to the Security Agreement Amendment. Notwithstanding the above, (i) to the extent that any portion of the Indebtedness is a consumer loan, that portion shall not be secured by any deed of trust or mortgage on or other security interest in any of the undersigned's principal dwelling or in any of the undersigned's real property which is not a purchase money security interest as to that portion, unless expressly provided to the contrary in another place, or (ii) if the undersigned (or any of them) has (have) given or give(s) Lender a deed of trust or mortgage

covering real property which, under Texas law, constitutes the homestead of such person, that deed of trust or mortgage shall not secure this Note or any other indebtedness of the undersigned (or any of them) unless expressly provided to the contrary in another place.

If the undersigned (or any of them) or any guarantor under a guaranty of all or part of the Indebtedness ("guarantor") fail(s) to pay this Note or any of the Indebtedness when due, by maturity, acceleration or otherwise, or fail(s) to pay any Indebtedness owing on a demand basis upon demand, in each case, subject to any applicable notice and cure period provided under the Security Agreement, or if an Event of Default (as defined in the Security Agreement) occurs (subject to applicable notice and cure periods) and is continuing, then Lender, upon the occurrence and at any time during the continuance or existence of any of these events (each a "Default"), may, in accordance with the applicable Loan Documents, at its option and without prior notice to the undersigned (or any of them), except as may be expressly required by any applicable Loan Document, declare any or all of the Indebtedness to be immediately due and payable, sell or liquidate all or any portion of the collateral described in the Security Agreement, set off against the Indebtedness any amounts owing by Lender to the undersigned (or any of them), charge interest at the default rate provided in the document evidencing the relevant Indebtedness and exercise any one or more of the rights and remedies granted to Lender by any agreement with the undersigned (or any of them) or given to it under applicable law.

If this Note is signed by two or more parties (whether by all as makers or by one or more as an accommodation party or otherwise), the obligations and undertakings under this Note shall be that of all and any two or more jointly and also of each severally. This Note shall bind the undersigned, and the undersigned's respective heirs, successors and assigns.

The undersigned waive(s) presentment, demand, protest, notice of dishonor, notice of demand or intent to demand, notice of acceleration or intent to accelerate, and all other notices, and agree(s) that no extension or indulgence to the undersigned (or any of them) or release, substitution or nonenforcement of any security, or release or substitution of any of the undersigned, any guarantor or any other party, whether with or without notice, shall affect the obligations of any of the undersigned. The undersigned waive(s) all defenses or right to discharge available under Section 3.605 of the Texas Uniform Commercial Code and waive(s) all other suretyship defenses or right to discharge. The undersigned agree(s) that Lender has the right to sell, assign, or grant participations or any interest in, any or all of the Indebtedness, and that, in connection with this right, but without limiting its ability to make other disclosures to the full extent allowable, Lender may disclose all documents and information which Lender now or later has relating to the undersigned or the Indebtedness. The undersigned agree(s) that Lender may provide information relating to this Note or relating to the undersigned to Lender's parent, affiliates, subsidiaries and service providers. The foregoing shall be at the sole cost and expense of Lender and will not result in any costs or out-of-pocket expenses to the undersigned.

The undersigned agree(s) to reimburse Lender, or any other holder or owner of this Note, for any and all costs and expenses (including, without limit, court costs, legal expenses and reasonable attorneys' fees, whether inside or outside counsel is used, whether or not suit is instituted, and, if suit is instituted, whether at the trial court level, appellate level, in a bankruptcy, probate or administrative proceeding or otherwise) incurred in collecting or

attempting to collect this Note or the Indebtedness or incurred in any other matter or proceeding relating to this Note or the Indebtedness.

The undersigned acknowledge(s) and agree(s) that there are no contrary agreements, oral or written, establishing a term of this Note and agree(s) that the terms and conditions of this Note may not be amended, waived or modified except in a writing signed by an officer of Lender expressly stating that the writing constitutes an amendment, waiver or modification of the terms of this Note. As used in this Note, the word "undersigned" means, individually and collectively, each maker, accommodation party, endorser and other party signing this Note in a similar capacity. If any provision of this Note is unenforceable in whole or part for any reason, the remaining provisions shall continue to be effective. Chapter 346 of the Texas Finance Code (and as the same may be incorporated by reference in other Texas statutes) shall not apply to the Indebtedness evidenced by this Note. **THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES.**

This Note, the Security Agreement, and all other documents, instruments and agreements evidencing, governing, securing, guaranteeing or otherwise relating to or executed pursuant to or in connection with this Note or the Indebtedness evidenced hereby (whether executed and delivered prior to, concurrently with or subsequent to this Note), as such documents may have been or may hereafter be amended from time to time (the "Loan Documents") are intended to be performed in accordance with, and only to the extent permitted by, all applicable usury laws. If any provision hereof or of any of the other Loan Documents or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the application of such provision to any other person or circumstance nor the remainder of the instrument in which such provision is contained shall be affected thereby and shall be enforced to the greatest extent permitted by law. It is expressly stipulated and agreed to be the intent of the holder hereof to at all times comply with the usury and other applicable laws now or hereafter governing the interest payable on the indebtedness evidenced by this Note. If the applicable law is ever revised, repealed or judicially interpreted so as to render usurious any amount contracted for, charged, taken, reserved or received under this Note or under any of the other Loan Documents or any other communication or writing between the undersigned and Lender related to the subject matter of the Loan Documents, or contracted for, charged, taken, reserved or received with respect to the Indebtedness evidenced by this Note, or if Lender's exercise of the option to accelerate the maturity of this Note, or if any prepayment by the undersigned or prepayment agreement results (or would, if complied with, result) in the undersigned having paid, contracted for or being charged for any interest in excess of that permitted by law, then it is the express intent of the undersigned and Lender that this Note and the other Loan Documents shall be limited to the extent necessary to prevent such result and all excess amounts theretofore collected by Lender shall be credited on the principal balance of this Note or, if fully paid, upon such other Indebtedness as shall then remain outstanding (or, if this Note and all other Indebtedness have been paid in full, refunded to the undersigned), and the provisions of this Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectable hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the then applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums

paid, or agreed to be paid, by the undersigned for the use, forbearance, detention, taking, charging, receiving or reserving of the Indebtedness of the undersigned to Lender under this Note or arising under or pursuant to the other Loan Documents shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such Indebtedness until payment in full so that the rate or amount of interest on account of such Indebtedness does not exceed the usury ceiling from time to time in effect and applicable to such Indebtedness for so long as such Indebtedness is outstanding. To the extent federal law permits Lender to contract for, charge or receive a greater amount of interest, Lender will rely on federal law instead of the Texas Finance Code, as supplemented by Texas Credit Title, for the purpose of determining the Maximum Rate. Additionally, to the maximum extent permitted by applicable law now or hereafter in effect, Lender may, at its option and from time to time, implement any other method of computing the Maximum Rate under the Texas Finance Code, as supplemented by Texas Credit Title, or under other applicable law, by giving notice, if required, to the undersigned as provided by applicable law now or hereafter in effect. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

For the purposes of this Note, the following terms have the following meanings:

"Applicable Interest Rate" means, in respect of all or any part of the Indebtedness hereunder, the interest rate in effect in accordance with the terms of this Note.

"Business Day" means any day, other than a Saturday, Sunday or any other day designated as a holiday under Federal or applicable State statute or regulation, on which Lender is open for all or substantially all of its domestic and international business (including dealings in foreign exchange) in Austin, Texas.

"Change in Law" means the occurrence, after the date hereof, of any of the following: (i) the adoption or introduction of, or any change in any applicable law, treaty, rule or regulation (whether domestic or foreign) now or hereafter in effect and whether or not applicable to Lender on such date, or (ii) any change in interpretation, administration or implementation of any such law, treaty, rule or regulation by any Governmental Authority, or (iii) the issuance, making or implementation by any Governmental Authority of any interpretation, administration, request, regulation, guideline, or directive (whether or not having the force of law), including any risk-based capital guidelines. For purposes of this definition, (x) a change in law, treaty, rule, regulation, interpretation, administration or implementation shall include, without limitation, any change made or which becomes effective on the basis of a law, treaty, rule, regulation, interpretation , administration or implementation then in force, the effective date of which change is delayed by the terms of such law, treaty, rule, regulation, interpretation, administration or implementation, and (y) the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203, H.R. 4173) and all requests, rules, regulations, guidelines, interpretations or directives promulgated thereunder or issued in connection therewith shall be deemed to be a "Change in "Law", regardless of the date enacted, adopted, issued or promulgated, whether before or after the date hereof, and (z) all requests, rules, guidelines or directives promulgated by Lender for International Settlements, the Basel Committee on Banking Supervision (or any

successor or similar authority) or the United States regulatory authorities, in each case pursuant to Basel III, shall each be deemed to be a "Change in Law", regardless of the date enacted, adopted, issued or implemented.

"Governmental Authority" means the government of the United States of America or any other nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central Lender or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including, without limitation, any supranational bodies such as the European Union or the European Central Lender).

No delay or failure of Lender in exercising any right, power or privilege hereunder shall affect such right, power or privilege, nor shall any single or partial exercise thereof preclude any further exercise thereof, or the exercise of any other power, right or privilege. The rights of Lender under this Agreement are cumulative and not exclusive of any right or remedies which Lender would otherwise have, whether by other instruments or by law.

**THE UNDERSIGNED AND LENDER, BY ACCEPTANCE OF THIS NOTE, ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED UNDER CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS NOTE OR THE INDEBTEDNESS.**

**THIS WRITTEN LOAN AGREEMENT (AS DEFINED BY SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE) REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

[Signature page follows.]

**PAULS VALLEY HOSPITAL AUTHORITY,**
an Oklahoma public trust

By: Gary Alfred
Name: Gary Alfred
Title: Chairman

PAULS VALLEY HOSPITAL AUTHORITY OFFICIAL SEAL OKLAHOMA

ATTEST:

Kira Davis

**ACKNOWLEDGED BY LENDER:**

**NEWLIGHT HEALTHCARE, LLC,**
a Texas limited liability company

By: Todd F. Bied
Name: Todd F. Biederman
Title: President and CEO