# FIRST AMENDMENT TO SECURITY AGREEMENT

THIS FIRST AMENDMENT TO SECURITY AGREEMENT (this "Amendment") is entered into effective as of December 1, 2016 ("Commencement Date") by and among PAULS VALLEY HOSPITAL AUTHORITY, an Oklahoma public trust ("Debtor"), NEWLIGHT HEALTHCARE, LLC, a Texas limited liability company, and LTC GROUP, LLC, a Texas limited liability company (with their successors and assigns, are collectively referred to herein as "Secured Parties").

WHEREAS, Debtor and Secured Parties entered into that certain Security Agreement (the "Agreement") dated as of October 3, 2016 wherein Debtor granted to Secured Parties a secured interest in certain Collateral (as defined in the Agreement);

WHEREAS, Debtor desires to grant Secured Parties a secured interest in additional assets, to acknowledge that the Agreement provides security for additional Debtor liabilities, and to amend certain provisions of the Agreement as set forth herein;

NOW THEREFORE, in consideration of the premises and the mutual promises and covenants contained herein, Debtor and Secured Parties do hereby agree as follows:

1. <u>Defined Terms</u>. All capitalized terms used but not otherwise defined in this Amendment have the same meanings as in the Agreement.

2. <u>Revised and New Definitions in Section 1</u>.

   a. The definition of "Collateral" in Section 1 of the Agreement is hereby deleted in its entirety and replaced with the following:

   " "Collateral" means all of the following described property owned by Debtor, whether now owned or hereafter acquired:

   (a) ACCOUNTS, which means any "account," as such term is presently or hereafter defined in Article 9 of the UCC, now owned or hereafter acquired by Debtor, and in any event shall include, without limitation, each of the following, whether now owned or hereafter acquired by Debtor: accounts, accounts receivable, contract rights, bills, acceptances, and other forms of obligations arising out of the sale, lease or consignment of goods or the rendition of services by Debtor; together with any property evidencing or relating to the Accounts (such as guaranties, credit insurance), any security for the Accounts, and all Books and Records relating thereto;

   (b) any moneys received for Medicare or Medicaid Electronic Health Record Stimulus or any cost report settlements (including any re-openings of prior cost reports); and

1

(c) PROCEEDS, which means any "proceeds," as such term is presently or hereafter defined in Article 9 of the UCC, now owned or hereafter acquired by Debtor, and in any event shall include, without limitation: any and all Proceeds of any of the foregoing, including, without limitation, whatever is received upon the use, lease, sale, exchange, collection, any other utilization or any disposition of any of the Collateral described in this Section 1, whether cash or non-cash, all rental or lease payments, accounts, chattel paper, instruments, documents, contract rights, general intangibles, equipment, inventory, substitutions, additions, accessions, replacements, products, and renewals of, for, or to such property and all insurance therefor."

b. <u>Revised Definition of Event of Default</u>. The clause (iv) of the definition of "Event of Default" in Section 1 of the Agreement is hereby deleted in its entirety and replaced with the following:

"(iv) any breach or violation of any representation, warranty, covenant or term of this Agreement, the Management Agreement, the NewLight Note, or any other agreement between Debtor and one or both of the Secured Parties."

c. <u>Revised Definition of NewLight Liabilities</u>. The definition of "NewLight Liabilities" in Section 1 of the Agreement is hereby deleted in its entirety and replaced with the following:

"NewLight Liabilities" means and includes any and all indebtedness, obligations, and liabilities of any kind arising in any way of Debtor to either or both of the Secured Parties, now existing or hereafter created, under the Management Agreement, this Agreement, the NewLight Note, or otherwise, including any amortization, future advances, whether obligatory or voluntary, under, or refinancings, renewals or extensions of or substitutions for, any existing or future debt and all liabilities and obligations of Debtor hereunder; as well as all costs, expenses, advances and liabilities that may be made or incurred by the Secured Parties in any way in connection with any of the NewLight Liabilities or any collateral security therefor.

d. <u>New Definition of NewLight Note</u>. The following definition of "NewLight Note" is hereby added to the end of in Section 1 of the Agreement:

"NewLight Note" means that certain Promissory Note dated December 1, 2016 in the original principal amount of $1,050,000.00, or, if less, the total of advances made thereon, made by Debtor in favor of NewLight Healthcare, LLC, a Texas limited liability company.

3. <u>Revised Section 3</u>. Section 3 of the Agreement is hereby deleted in its entirety and replaced with the following:

"3. <u>Indemnity of Secured Parties</u>. Debtor shall indemnify and hold harmless Secured Parties (for purposes of this subsection, the term "Secured Parties" shall include the managers, officers, employees, members, and agents of Secured Parties and any persons or entities owned or controlled by, owning or controlling, or under common

2

control or affiliated with Secured Parties) from and against, and reimburse them for, all claims, demands, liabilities, losses, damages, causes of action, judgments, penalties, costs and expenses (including, without limitation, reasonable attorney fees) which may be imposed upon, asserted against or incurred or paid by them by reason of, on account of or in connection with the Pledge Agreements, the Management Agreement, the NewLight Note, or on account of any transaction arising out of or in any way connected with the Collateral or with this Agreement. WITHOUT LIMITATION, IT IS THE INTENTION OF DEBTOR AND DEBTOR AGREES THAT THE FOREGOING INDEMNITIES SHALL APPLY TO EACH INDEMNIFIED PARTY WITH RESPECT TO CLAIMS, DEMANDS, LIABILITIES, LOSSES, DAMAGES, CAUSES OF ACTION, JUDGMENTS, PENALTIES, COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEY FEES) WHICH IN WHOLE OR IN PART ARE CAUSED BY OR ARISE OUT OF THE NEGLIGENCE OF SUCH (AND/OR ANY OTHER) INDEMNIFIED PARTY OR ANY STRICT LIABILITY. HOWEVER, SUCH INDEMNITIES SHALL NOT APPLY TO ANY INDEMNIFIED PARTY TO THE EXTENT THE SUBJECT OF THE INDEMNIFICATION IS CAUSED BY OR ARISES OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH INDEMNIFIED PARTY. The foregoing indemnities shall survive the termination of this Agreement, any foreclosure of the collateral provided in the Pledge Agreements or conveyance in lieu of foreclosure and the repayment of the Loan and the discharge, and release of the Credit Documents."

4. *Revised Section 7.1*. Section 7.1 of the Agreement is hereby deleted in its entirety and replaced with the following:

"7.1   *Acceleration of Obligations; General Rights of the Secured Parties*. Upon the occurrence of an Event of Default, at the Secured Parties' sole option, all obligations, including duties and payments, owed to Secured Parties pursuant to this Agreement, the Management Agreement, the NewLight Note or any other agreement between Debtor and either Secured Party (collectively, the "Obligations"), shall immediately become due and payable in full, all without protest, presentment, demand or further notice of any kind to Debtor, all of which are expressly waived. Upon and following an Event of Default, the Secured Parties may, at their option, exercise any and all rights and remedies they have under this Security Agreement, the Management Agreement, the NewLight Note, or any other agreement between Debtor and either Secured Party and/or applicable law, including, without limitation, the right to charge and collect interest on the principal portion of the Obligations at a rate equal to ten percent (10%) per annum (or in the case of the NewLight Note, twelve and three quarters of one percent (12.75%) per annum), upon and after an Event of Default, maturity (whether by acceleration or otherwise) and entry of a judgment in favor of the Secured Parties with respect to any or all of the Obligations."

5. _Revised Section 8.1_. Section 8.1 of the Agreement is hereby deleted in its entirety and replaced with the following:

"8.1 _Remedies Cumulative; No Waiver_. The rights, powers and remedies of the Secured Parties provided in this Security Agreement, the Management Agreement, and the NewLight Note are cumulative and not exclusive of any right, power or remedy provided by law or equity. No failure or delay on the part of the Secured or any of them in the exercise of any right, power or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or remedy preclude any other or further exercise thereof, or the exercise of any other right, power or remedy."

6. _Revised Section 8.2(a)_. Section 8.2(a) of the Agreement is hereby deleted in its entirety and replaced with the following:

"(a) If to the Debtor:

Pauls Valley General Hospital
100 Valley Drive
Pauls Valley, Oklahoma 73075
Attn: Board of Trustees"

7. _Revised Section 8.3_. Section 8.3 of the Agreement is hereby deleted in its entirety and replaced with the following:

"8.3 _Costs and Expenses_. Debtor shall promptly pay (or reimburse, as the Secured Parties may elect) all costs and expenses that the Secured Parties may hereafter incur in connection with the perfection and enforcement of this Agreement, the Management Agreement, the NewLight Note, the collection of all amounts due under this Agreement, the Management Agreement, the NewLight Note, and all amendments, modifications, consents or waivers, if any, to this Agreement, the Management Agreement, or the NewLight Note."

8. _Revised Section 8.5_. Section 8.5 of the Agreement is hereby deleted in its entirety and replaced with the following:

"8.5 _Integration_. This Security Agreement, the Management Agreement, and the NewLight Note constitute the sole agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof."

9. _Commencement Date_. This Amendment shall be construed and interpreted as if it were executed simultaneously with the Agreement and that the terms of this Amendment shall take effect as if they were part of the Agreement upon its execution and delivery.

10. _Conflict_. The terms of this Amendment prevail if there is a conflict with the terms of the Agreement.

4

11.     Ratification.  The Agreement, as amended and modified by this Amendment, is ratified and confirmed by the parties and remains in full force and effect.

12.     Authorization.  The signing and performance of this Amendment has been duly and validly authorized, executed, and delivered by Operator and Atrium, and this Amendment constitutes the valid and enforceable obligation of the parties in accordance with its terms.

13.     Entire Agreement.  The Agreement, as amended by this Amendment, contains the entire agreement among the parties with respect to the subject matter hereof. All prior negotiations and understandings are merged herein.

14.     No Presumption in Drafting.  The parties acknowledge that they have independently negotiated the provisions of this Amendment, that they have relied upon their own counsel as to matters of law and application and that no party has relied on any other party with regard to such matters. The parties expressly agree that there shall be no presumption created as a result of any party having prepared in whole or in part any provisions of this Amendment.

15.     Counterparts.  This Amendment may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Amendment and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Amendment and of signature pages by facsimile, or by PDF or similar imaging transmission, will constitute effective execution and delivery of this Amendment as to the parties and may be used in lieu of the original Amendment for all purposes. Signatures of the parties transmitted by facsimile, or by .pdf or similar imaging transmission, will be deemed to be their original signatures for any purpose whatsoever.

[Signature page follows.]

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed by their duly authorized representatives as of the Commencement Date.

ATTEST:

BY: _____

DEBTOR:

PAULS VALLEY HOSPITAL AUTHORITY,
an Oklahoma public trust

By: _____
Name: Gary Alfred
Title: Chairman

SECURED PARTIES:

NEWLIGHT HEALTHCARE, LLC,
a Texas limited liability company

_____
Todd F. Biederman, President and CEO

LTC GROUP, LLC,
a Texas limited liability company

_____
Todd F. Biederman, President

6