## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **(1) PAULS VALLEY HOSPITAL AUTHORITY d/b/a PAULS VALLEY GENERAL HOSPITAL,** )<br><br>)<br>**Plaintiff,** )<br><br>)<br>**v.** )<br><br>)<br>**(1) NEWLIGHT HEALTHCARE, LLC,** )<br>**a Texas limited liability company,** )<br>**(2) LTC GROUP, LLC, a Texas limited** )<br>**Liability company, and;** )<br>**(3) FIRST UNITED BANK AND TRUST CO.** )<br>**an Oklahoma Domestic Bank,** )<br><br>)<br>**Defendants.** ) | **Case No.:  CIV-18-826-F** |

## AMENDED NOTICE OF REMOVAL

Defendants NewLight Healthcare, LLC, a Texas limited liability company ("NewLight") and LTC Group, LLC, a Texas limited liability company ("LTC Group")(collectively, "Defendants"), hereby submit an Amended Notice of Removal supplementing its Notice of Removal filed on August 26, 2018 [Doc. No. 1] removing this lawsuit from the District Court of Garvin County, State of Oklahoma, to the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. §§1332(a)(1) and 1441(a).[1]  This Amended Notice is submitted in response to this Court's Order of August 29, 2018 [Doc. No. 3], requesting additional jurisdictional information regarding the Plaintiff and Defendants.  In support of this Amended Notice of Removal, Defendants advise the Court as follows:

---

[1] The exhibits contained within the Notice of Removal [Doc. No. 1] are incorporated herein by reference.

## I.     PARTIES

1.      Plaintiff Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital ("PVHA") is an Oklahoma public trust.  Because plaintiff "is not a corporation, it possesses its members' citizenship."  *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S.Ct. 1013, 1015 (2016).  Upon information and belief, the trustees of PVHA are the following individuals:  Gary Alfred, Michael Parrish, Shirl Montgomery, Jocelyn Rushing, and Patrick Grimmett.  Upon information and belief, each of the trustees of PVHA are residents of the City of Pauls Valley, Oklahoma, serve on the Pauls Valley City Council and are citizens of the State of Oklahoma.  Upon information and belief, the beneficiary of PVHA is the City of Pauls Valley, an Oklahoma incorporated municipality.  For purposes of diversity jurisdiction, the City of Pauls Valley is an Oklahoma citizen.  *See State of Oklahoma ex rel. Williams v. Oklahoma Natural Gas Corp.*, 83 F.2d 986, 988 (10th Cir. 1936)("a municipal subdivision of the state, such as a county, city, town or school district, having a separate corporate entity, is a citizen [of that state]" for diversity purposes);  *see also Williams v. Clay County Police Dep't*, 2011 WL 2294257, at *2 (D. Kansas, June 8, 2011).  Because each of the trustees of PVHA, as well as the beneficiary of PVHA, are citizens of Oklahoma, PVHA is treated as a citizen of Oklahoma for purposes of establishing diversity jurisdiction.

2.      Defendant NewLight, a Texas limited liability company, is a citizen of the States of Texas, Delaware and Maryland for purposes of diversity jurisdiction.  The members of NewLight are:

▪        The Mendocino Group, LLC, a Texas limited liability company.   The members of Mendocino Group, LLC are Todd Biederman, an individual and citizen of Texas, and Ryma Biederman, an individual and citizen of Texas.   For purposes of diversity jurisdiction, The Mendocino Group, LLC is a citizen of the State of Texas.   *See Spring Creek Exploration & Prod. Co. v. Hess Bakken Inv., II, LLC,* 887 F.3d 1003, 1014 (10th Cir. 2018) *quoting Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015)(A limited liability company "takes the citizenship of all its members.").

▪        Braunwald Group, LP, a Texas limited partnership ("Braunwald Group, LP").   The general partner of the Braunwald Group is Braunwald Group GP, LLC, a Texas limited liability company ("Braunwald Group GP, LLC").   The limited partner of the Braunwald Group, LP is Heath Schiesser, an individual and citizen of Texas.   The sole member of Braunwald Group GP, LLC is also Heath Schiesser.   For purposes of diversity jurisdiction, the Braunwald Group, LP is a citizen of the State of Texas.   *See Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015)("the Supreme Court has held an unincorporated entity's citizenship is typically determined by its members' citizenship […which includes] limited partnership associations[.]").

▪        SysInformation, Inc. is a Delaware corporation with its principal place of business in Austin, Texas.   For purposes of diversity jurisdiction, SysInformation, Inc. is a citizen of the States of Texas and Delaware.   *See Grynberg v. Kinder Morgan Energy Partners, L.P.*, *supra,* 805 F.3d at 905 *citing* 28 U.S.C. §1332(c)(1), *Hertz Corp. v.*

*Friend*, 559 U.S. 77, 85, 88 (2010)(If one of the members of a limited liability company is a corporation, "[f]or diversity, a corporation is a citizen of its state of incorporation and the state where its principal place of business is located.").

▪   CLC Healthcare, LLC, a Texas limited liability company ("CLC Healthcare, LLC").   The members of CLC Healthcare, LLC are Lee Hughes, an individual and citizen of Texas, and Katherine Hughes, an individual and citizen of Texas.  For purposes of diversity jurisdiction, CLC Healthcare, LLC is a citizen of Texas.

▪   Jeff Potter, an individual, is a citizen of the State of Texas.

▪   Greg Skalla, an individual, is a citizen of the State of Maryland.

3.   Defendant, LTC Group, LLC, a Texas limited liability company, is a citizen of the States of Texas, Delaware and Maryland for purposes of diversity jurisdiction.   The sole member of LTC Group is The Sage Group Services, LLC, a Delaware limited liability company ("The Sage Group Services, LLC").   The sole member of The Sage Group Services, LLC is defendant NewLight Healthcare, LLC, a Texas limited liability company, which, as set forth *supra*, is a citizen of the States of Texas, Delaware and Maryland.

4.   Defendant First United Bank and Trust Co. ("First United Bank") is an Oklahoma domestic bank headquartered in Durant, Oklahoma.  For purposes of diversity of citizenship, the Bank is a citizen of Oklahoma but, as set forth *infra*, is only a <u>nominal</u> party who was "fraudulently joined" in this action for the sole purpose of defeating diversity jurisdiction, and is not a "real and substantial party to the controversy."  *See Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 460–61 (1980)("[A] federal court **must**

4

disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.")(emphasis added).  The citizenship of First United Bank, a nominal party with no stake in this controversy, must be disregarded for diversity jurisdiction purposes.

## II.
## BACKGROUND

5.     This Notice seeks removal of a case filed on August 15, 2018, in the District Court of Garvin County, Oklahoma, styled *Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital v. NewLight Healthcare, LLC, LTC Group, LLC and First United Bank and Trust Co.*, Case No. CJ-2018-121 ("State Lawsuit," Exhibit 1).  Plaintiff PVHA, the local hospital in Pauls Valley, OK, and debtor which owes defendant NewLight in excess of $5.5 million arising from a breach of a Promissory Note and Management Services Agreement, filed the State Lawsuit for the sole purpose of thwarting NewLight's contractual and lawful efforts to collect on PVHA's properly secured debt.  Simultaneous with the filing of the State Lawsuit, PVHA requested from the Garvin County District Court, and obtained from the state court without any notice to Defendants, a "Temporary Restraining Order" ("TRO") enjoining defendant NewLight's lawful collection activities.  (TRO, Exhibit 2).  While the state court TRO purports to "preserve the *status quo*," in fact, the TRO abrogates NewLight's contractually-fixed rights to PVHA's collateral, namely to demand and receive PVHA's accounts receivable. The TRO not only does <u>not</u> preserve the "status quo," but in fact constitutes an improper

interference by the state court in NewLight's contractual and legal rights that should be immediately dissolved.[2]

6.       The relationship between NewLight and PVHA began following the execution of a "Management Services Agreement" between the parties dated November 12, 2013 ("MSA"), pursuant to which NewLight agreed to assume all managerial and operational duties of the Pauls Valley Hospital in Pauls Valley, Oklahoma. NewLight, based in Austin, TX, is a hospital management company that specializes in managing primarily rural hospitals in financial distress in Texas, Oklahoma and New Mexico. NewLight's wholly-owned subsidiary, defendant LTC Group, assists non-state governmental entities with participation in Medicaid special payment programs, and currently works with more than 80 nursing homes in Texas and Oklahoma.[3] Prior to NewLight and PVHA executing the MSA, PVHA had filed for Chapter 9 bankruptcy protection in March 2013 due to its inability to pay its obligations, and had recently ended its management agreement with St. Anthony's Hospital in Oklahoma City, OK. In short, prior to the agreement with NewLight, PVHA was on the verge of financial collapse, and the Hospital faced imminent closure. In local press reports following NewLight's assumption of management responsibilities at the Hospital, NewLight was

---

[2] Shortly following the filing of the instant Notice of Removal, defendants NewLight and LTC Group will file a Motion to Dissolve the TRO with this Court.

[3] Defendant LTC Group was named a party to the State Lawsuit by PVHA presumably because it is a party to the Security Agreement discussed *infra*, but LTC Group otherwise is not involved in the dispute between PVHA and NewLight which is the subject of the State Lawsuit.

praised for its "commitment" and "generosity" to Pauls Valley, and its efforts were credited with keeping the failing Hospital "afloat."

7.      After NewLight had managed the Hospital for almost three years, in early-2016, in response to a cash flow shortage, PVHA requested, and Newlight agreed, to temporarily defer payment of NewLight's monthly management fees and expenses owed by PVHA under the MSA.  NewLight agreed to this proposal on a short-term basis in order to allow the Hospital to shore up its finances.  NewLight's agreement to defer payment of its management fees and expeness meant that NewLight was not only foregoing payment of its fees and reimbursement of expenses in the short term, but also covering the salary, travel, expense and benefit obligations of the Hospital CEO.[4]

8.      Shortly thereafter, in October 2016, PVHA approached NewLight about obtaining a short-term loan of $250,000 to address the Hospital's continuing cash flow issues.  NewLight loaned the requested $250,000 to the Hospital on October 4, 2016,  and PVHA and NewLight entered into a Security Agreement (dated October 3, 2016) granting NewLight a Security Interest in PVHA's collateral (Security Agreement, Exhibit 3).

9.      On December 1, 2016, still short on funds, PVHA sought additional funding from NewLight, and NewLight agreed to loan PVHA an additional $1,050,000, which is evidenced by a Promissory Note between the parties in that amount dated December 1, 2016 ("Promissory Note," Exhibit 4).  PVHA repaid the first $250,000 loan from NewLight from the funds received through the Promissory Note.  The Promissory

_____

[4] The last payment made by PVHA to NewLight under the MSA was January 2016.

Note was secured by the prior Security Agreement dated October 3, 2016, which was executed by NewLight, PVHA, and defendant LTC Group, which was subsequently amended by a First Amendment to Security Agreement dated December 1, 2016 (attached as Exhibit 5)(collectively referred to as the "Security Agreement").  To perfect the lien granted by PVHA in the Security Agreement, NewLight filed a UCC-1 financing statement on October 12, 2016 (October 2016 UCC-1 financing statement, attached as Exhibit 6).  An amended UCC-1 financing statement was recorded by NewLight on December 28, 2016, expanding the description of the accounts receivable collateral covered to mirror the expanded description of the collateral contained in the First Amendment to Security Agreement (Amended UCC-1 financing statement, attached as Exhibit 7).  Pursuant to the terms of the Promissory Note, the entire unpaid principal and accrued interest was due on December 1, 2017.

10.    By April 2018, with the situation long-since having become untenable, PVHA's outstanding balance on the Promissory Note owed to NewLight totaled $1,193,763.54, and past due management fees and expenses under the MSA totaled $1,584,254.62, for a total amount due and owing by PVHA to NewLight of $2,778,018.16 (this amount does not include an additional $3,460,000 now owed to NewLight for PVHA's breach of the MSA).  On April 16, 2018, Texas counsel for NewLight sent PVHA a "Notice of Maturity and Events of Default," which notified PVHA of its default on its obligations under the Promissory Note and MSA, and made demand for payment in full of all obligations owed by PVHA to NewLight.  No funds were paid by PVHA in response to this April 2018 Notice, but NewLight did send out

8

one account debtor demand letter, in accordance with its rights set forth in and the terms of the Security Agreement, and received funds from The City of Wynnewood.  Continuing its desire to want to assist PVHA, NewLight and PVHA agreed to apply $180,000 of the funds received from Wynnewood towards the outstanding balance on the Promissory Note, but NewLight voluntarily agreed to allow PVHA to retain approximately $57,000 of funds to which NewLight was entitled to be used for continued operations of the Hospital.

11.     At the end of April 2018, PVHA informed NewLight that the Hospital was likely to shut down, and that PVHA was trying to find a buyer or new financing for the Hospital.  PVHA requested that NewLight continue its management of the Hospital (with continued deferred pay), as well as continue to allow the Hospital to use NewLight's properly secured collateral (the accounts receivable) to allow the Hospital to continue operations and avoid a shutdown.  NewLight agreed to this proposal on a short-term basis, with the hope that this assistance would allow PVHA to find a buyer or obtain new financing.  In late May 2018, PVHA informed NewLight that it was working on financing or a buy-out with Alliance Healthcare Partners Oklahoma ("Alliance"), and asked that Newlight work with Alliance to allow continued use of the Hospital's accounts receivable for operations to avoid closure of the Hospital.  Again, in order to allow PVHA additional time to obtain new financing, NewLight agreed.

12.     After the passage of several more weeks, in June 2018, Alliance and PVHA still had not made the anticipated offer to buy out Newlight or obtain its secured position from new financing, and PVHA continued to make no payments on the matured

Promissory Note and MSA delinquincies.  As a result, on June 26, 2018, NewLight sent PVHA a "Notice of Maturity and Events of Default, Notice of Termination of Right to Use Funds Collected From Accounts Receivables, and Demand for Turnover of Accounts Receivable Payments Collected to PVHA," reiterating the notice and demand previously made on April 16, 2018, and giving notice of the termination of PVHA's right to use the accounts receivable and proceeds covered by NewLight's secured lien, and further demanding that all such funds be remitted to NewLight as provided by the Security Agreement.  Again, PVHA did not comply with NewLight's June 26 notice, sent no payments to NewLight and, contrary to the terms of the Security Agreement, did not cease use of the accounts receivable.

13.    After not having been paid for managing the Hospital for more than eighteen (18) months, Newlight informed PVHA that it would cease its management duties as of July 3, 2018.  Alliance assumed management duties of the Hospital on that date, and continues to manage the Hospital, all while wrongfully utilizing NewLight's secured collateral to continue operations.

14.    During the month of July 2018, PVHA continued its refusal to make any payments towards its obligations under the Promissory Note or MSA.  On July 30, 2018, NewLight sent notice to Pauls Valley National Bank ("PV Bank"), the institution with which PVHA banks, notifying the PV Bank of PVHA's defaults and the termination of PVHA's right to use the accounts receivable.  NewLight further requested that the PV Bank forward those funds to Newlight or, if the PV Bank would not do so, to hold those

funds and to neither take the funds itself, nor allow use of the funds by PVHA, whose right to use the funds had been terminated by NewLight.

15.    On July 31, 2018, due to PVHA's continuing and uncured defaults, NewLight sent a further "Notice Of Private Sale Of Disposition Of Collateral Pursuant To The Uniform Commercial Code-Secured Transactions" to PVHA, providing written notice in accordance with Section 7.2(d) of the Security Agreement (and applicable provisions of the UCC) that NewLight was providing twenty (20) days written notice that it intended to conduct a private foreclosure sale of the "collateral" (as defined in the Security Agreement, Exhibit 5), at any time after August 20, 2018.  This Notice was also sent to other lienholders of the Hospital in accordance with UCC requirements, despite the specific representation by PVHA set forth at Section 4.6(b) of the Security Agreement that there were no other effective liens against the collateral (a misrepresentation by PVHA because it was not true), as well as the covenant contained at Section 6.1 of the Security Agreement that PVHA would defend the collateral against the claims and demands of all parties other than NewLight.

16.    On August 8, 2018, in accordance with its rights set forth at Sections 6.7 and 7.2(b) of the Security Agreement, NewLight sent 105 letters to the account debtors of PVHA notifying them of NewLight's enforceable lien on PVHA's accounts receivable, PVHA's defaults on its obligations to NewLight and NewLight's exercise of its right to have payment made directly to it by the account debtors of PVHA.  Following the imposition of the improper TRO, upon information and belief, PVHA contacted its account debtors instructing them to disregard NewLight's notice.

17.    On August 9, 2018, NewLight sent a final "Notice of Maturity and Events of Default, Notice of Termination of Right to Use Funds Collected From Accounts Receivables, and Demand for Turnover of Accounts Receivable Payments Collected" to PVHA, reiterating the notices and demands previously made, reiterating notice of the termination of PVHA's right to use accounts receivable and proceeds covered by NewLight's lien and again demanding remittance of all such funds to NewLight.  Notwithstanding NewLight's multiple notices, PVHA has not sent any payments and PVHA, Alliance and others continue to use NewLight's collateral in violation of NewLight's contractual rights and the law.   The amounts due and owing NewLight identified in the final Notice of August 9, 2018, remain unpaid, and interest continues to accrue on the outstanding principal balance on the Promissory Note and MSA deficiencies.  As of August 9, 2018, the amount due and owing in principal and interest on the Promissory Note totals $982,465.83, and the amount due and owing for management fees and expenses under the MSA totals $1,331,512.37, for a combined total outstanding owed to NewLight of $2,313,978.20.

18.    On August 10, 2018, NewLight sent a further "Demand for Financial Information and Records Access to PVHA" reiterating its prior notices and demands, and notifying PVHA of NewLight's exercise of its right to delivery of financial information and documents, to inspect its collateral, to audit and copy PVHA's books and records pursuant to the terms of the Security Agreement and requesting that NewLight's visit to accomplish this take place on August 16, 2018.

19.     In response, on August 15, 2018, PVHA filed the State Lawsuit and obtained (contrary to NewLight's contract rights and the UCC) a TRO without providing NewLight notice of the filing or opportunity to attend a hearing.   Notwithstanding NewLight's contractual rights set forth in the Security Agreement to obtain access to PVHA's financial information, PVHA has refused this access and has indicated it would do so only through discovery.

## III.
## BASIS FOR REMOVAL

20.     The State Lawsuit is removable to this Court pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(a).   This Court has original jurisdiction based upon diversity of citizenship among the parties because there is complete diversity between the plaintiff, PVHA, a citizen of the State of Oklahoma, and defendant NewLight, a citizen of the States of Texas, Delaware and Maryland, and defendant LTC Group, a citizen of the States of Texas, Delaware and Maryland.   LTC Group, a wholly-owned subsidiary of NewLight, joins NewLight in this Notice of Removal.   As more specifically detailed below, First United Bank is a nominal defendant with no stake in this controversy whatsoever, and was simply added by PVHA in an attempt to keep jurisdiction in its local Garvin County, Oklahoma, forum.   Under federal law, *infra*, First United Bank, as a "nominal" party, must be disregarded for purposes of determining diversity jurisdiction. Further, Plaintiff alleges damages of $2,000,000 in the State Lawsuit (see Exhibit 1), and NewLight's counterclaim (to be filed) against PVHA may exceed $5,500,000 (and in any

event will exceed $2,313,978.20).   The amount in controversy between the parties, exclusive of interest and costs, accordingly exceeds $75,000.

**IV.**
**FEDERAL DIVERSITY JURISDICTION EXISTS BETWEEN**
**THE "REAL AND SUBSTANTIAL" PARTIES TO THIS CONTROVERSY.**

A.    **Federal Diversity Jurisdiction Is Established Based Upon the Citizenship of the "Real and Substantial Parties" to this Controversy, In this Case, Plaintiff PVHA and Defendants NewLight and LTC Group.   The Citizenship of Defendant First United Bank Must Be Disregarded for Purposes of Diversity Jurisdiction Because First United Bank Is Not a "Real and Substantial Party to this Controversy," But In Fact Is a "Nominal" Defendant Which Was "Fraudulently Joined."**

"Federal courts have jurisdiction over controversies between 'Citizens of different States' when the amount in controversy exceeds $75,000 pursuant to 28 U.S.C. §1332(a)(1) and U.S.Const., Art. III, §2." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61 (1980).   "Early in its history, this Court established that the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be **real and substantial parties** to the controversy." *Id.* (emphasis added).   "Thus, a federal court **must** disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy. *Id.* (emphasis added).

In *Anderson v. Lehman Bros. Bank, FSB*, 528 F.App'x 793 (10th Cir. 2013), the Tenth Circuit addressed an appeal of a federal district court's decision to disregard the citizenship of a non-diverse party and find diversity jurisdiction based upon (1) the "fraudulent joinder" of a defendant, and (2) the non-diverse defendant "was only a 'nominal party.'"   *Id.* at 795-96.   In *Anderson*, supra, the Tenth Circuit explained that "[f]raudulent joinder need not involve actual fraud in the technical sense." *Id.*   "Instead,

14

it can occur when the plaintiff joins a 'resident defendant against whom no cause of action is stated' in order to prevent removal under a federal court's diversity jurisdiction." *Id. citing Dodd v. Fawcett Pubs., Inc.,* 329 F.2d 82, 85 (10th Cir. 1964). "When this occurs, the district court disregards the fraudulently joined non-diverse party for removal purposes." *Id.* "In addition, 'the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Id.* "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Id.*, *citing Lenon v. St. Paul Mercury Ins. Co.,* 136 F.3d 1365, 1369 (10th Cir. 1998).

"In general, the removing party must show that the plaintiff has 'no cause of action' against the fraudulently joined [or nominal] defendant." *Brazell v. Waite*, 525 Fed.Appx. 878, at *3 (10th Cir. 2013); *see also Chesapeake Exploration LLC v. BP America Production Co.*, 2010 WL 2891668, at *2 (W.D.Okla. July 21, 2010). In this analysis, "the court [is not] compelled to believe whatever the plaintiff says in his complaint." *Brazell*, 525 Fed.Appx. 878, at *3. "Rather, 'upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal.'" *Id. citing Smoot v. Chicago, Rock Island and Pac. R.R. Co.*, 378 F.2d 879, 881-82 (10th Cir. 1967). Finally, when considering whether a defendant is "nominal," "a court asks 'whether in the absence of the [party], the Court can enter a final judgment consistent with equity and good conscience, which would not be in any way unfair or inequitable." *Chesapeake Exploration LLC, supra*, 2010 WL 2891668, at *2

*quoting In Re Beazley Ins. Co.*, 2009 WL 205859, at *4 (5th Cir. 2009). "The test is not dependent on how the plaintiff labels its complaint, but rather on the practical effect of a judgment on a given defendant." *Id.* "Equity is the major concern in this inquiry." *Id.*

Here, in the State Lawsuit, PVHA <u>states no claim</u> against defendant First United Bank. Instead, the sole allegations made against defendant First United Bank are found in paragraphs 17 and 18 of the Petition, in which PVHA alleges:

> "Defendant Managers [NewLight and LTC Group] have, at best, a *junior* security interest in the assets behind defendant First United Bank and Trust Co[.]…Defendant First United Bank and Trust Co. claims an interest in the Hospital Assets and is made a defendant in order that this Court can determine the extent of its interest." (State Lawsuit, Exhibit 1, page 2).

In fact, defendants NewLight and LTC Group **acknowledge** the earlier-filed superior lien interest of First United Bank against the collateral stated in its financing statement, and **there exists no dispute whatsoever** between NewLight, LTC Group and First United Bank as to the nature and extent of First United Bank's security interest in the Hospital's assets. Interestingly, PVHA has also failed to plead that it has any dispute <u>of its own</u> with First United Bank as to the nature and extent of First United Bank's secured position.[5] First United Bank is not only **not** a "real and substantial party" to this action, but has no stake in this controversy <u>whatsoever</u>.

---

[5] Under Oklahoma law, "to invoke the jurisdiction of the court under the declaratory judgments act [12 O.S. 1651,] there must be an *actual, existing justiciable controversy* between parties having opposing interests, which interests must be direct and substantial, and involve an actual, as distinguished from a possible, potential or contingent dispute." *Easterwood v. Choctaw Cty. Dist. Attorney*, 2002 OK CIV APP 41, ¶ 11, 45 P.3d 436, 439–40 (Emphasis in original). In that regard, in a fraudulent joinder analysis, "…a naked declaratory judgment claim, untethered to any live controversy, states no cause of action." *MPVF Lexington Partners, LLC v. W/P/V/C, LLC*, 2016 WL 8234667, at *5 (D. Colo. Sept. 13, 2016).

In further explanation of First United Bank's interest, an Oklahoma UCC search on PVHA dated August 24, 2018, reveals that on page 5 of 6, a Financing Statement in favor of First United Bank was recorded on July 9, 2003, and identifies the collateral covered as "chattel paper, contract rights, personal property included in the trust estate[.]" ("2003 FUB UCC-1")(Declaration of Ryan Leonard, ¶3, attached as Exhibit 8).   The Legacy Number listed is 2003008310219.   *Id.*   On page 4 of 6 of the Oklahoma UCC search, a UCC-3 Continuation in favor of First United Bank was recorded on June 18, 2008 ("2008 FUB Continuation").   *Id.* at ¶4.   The 2008 FUB Continuation identifies that it relates back to the previously-referenced 2003 FUB UCC-1.   *Id.*   On page 2 of 6 of the Oklahoma UCC search, a Continuation in favor of First United Bank was recorded on June 12, 2013 ("2013 FUB Continuation").   *Id.* at ¶5.   The 2013 FUB Continuation indicates that it relates back to the 2003 FUB UCC-1.   *Id.*   On page 1 of 6 the Oklahoma UCC search, a final Continuation in favor of First United Bank was on April 13, 2018 ("2018 FUB Continuation").   *Id.* at ¶6.   The 2018 FUB Continuation indicates that it also relates back to the 2003 FUB UCC-1, and identifies the collateral covered as "chattel paper, contract rights, personal property included in the trust estate," which is identical to the collateral description in the 2003 FUB UCC-1.   *Id.*

In short, there exists <u>no dispute</u> between NewLight, LTC Group and First United Bank that the perfected lien of First United Bank supersedes the Security Agreement recorded by NewLight in the accounts receivable of PVHA up to the secured amount owed by PVHA to First United Bank.   Based upon information obtained by NewLight's counsel from a representative of First United Bank on or about August 10, 2018, the

current balance of PVHA's obligation to First United Bank secured by the 2003 FUB UCC-1 was represented at the time to be approximately $143,000, and it was represented that the obligation is current and not in default.   However, in a subsequent conversation between NewLight's counsel and First United Bank's counsel on August 24, 2018, First United Bank's counsel shared that there exists the possibility that PVHA's obligation to First United Bank secured by the 2003 FUB UCC-1 may in fact have been satisfied <u>in full</u>, which will shortly be confirmed by First United Bank.   Regardless, whether or not PVHA has an outstanding obligation to First United Bank secured by the 2003 FUB UCC-1 and subsequent continuations is <u>irrelevant</u>.   There exists <u>no dispute</u> between NewLight, LTC Group and First United Bank as to the first priority status of First United Bank's 2003 UCC-1 secured lien and subsequent continuation filings, which NewLight and LTC acknowledge and concede.

In sum, and for these reasons, First United Bank is not a "real and substantial party to this controversy," but in fact is a "nominal" party who has no stake <u>at all</u> in this controversy.   Moreover, PVHA fails to state an actual claim against First United Bank, further establishing First United Bank's status as a "nominal" party.   Similarly, while not requiring "actual fraud" (*see* Anderson, *supra*, 528 Fed.Appx. 793 at 795), defendants NewLight and LTC Group maintain that First United Bank was a "fraudulently joined" defendant, and made a party to the State Lawsuit by plaintiff PVHA for the sole purpose of PVHA's attempt to secure jurisdiction in its local Garvin County forum, which is relevant as the outcome of this litigation with an out-of-state creditor may well decide the future of the local Hospital.   Because First United Bank is not a "real and substantial

party to the controversy," and is instead a "nominal party," and because its inclusion by PVHA is subject to "fraudulent joinder," First United Bank's citizenship "**must**" be disregarded for purposes of determining diversity jurisdiction. *See Navarro*, *supra,* 446 U.S. 458, 460-61; *Anderson*, *supra*, 528 Fed.Appx. 793 at 795 (emphasis added).

## V.
## VENUE

Venue is proper in this Court under 28 U.S.C. §1441(a) because this district and division of this Court embraces Garvin County, Oklahoma, the place where the State Lawsuit was filed.

## IV.
## OTHER PREDICATES FOR REMOVAL

Defendants NewLight and LTC Group were served with the State Lawsuit on August 16, 2018.  The Notice of Removal [Doc. No. 1] was filed within thirty (30) days of that date, as required by 28 U.S.C. §1446(b)(1).  As required by 28 U.S.C. §1446(a) and Local Rule 81.2, a true and correct copy of the docket sheet and other pleadings in the State Lawsuit not otherwise attached hereto are attached as Exhibit 9.

The State Lawsuit was filed in the District Court of Garvin County, Oklahoma, as Case No. CJ-2018-121.  In accordance with 28 U.S.C. §1446(d), written notice of the Notice of Removal was promptly given to the plaintiff through its counsel of record, and a copy of such written notice was filed with the Clerk of the Court of Garvin County, Oklahoma.  By filing this Amended Notice of Removal, defendants NewLight and LTC Group do not waive any defenses that it may have to the Plaintiff's claims.

Respectfully Submitted,


S/ Ryan Leonard
Ryan Leonard, OBA #19155
Edinger, Leonard & Blakley, PLLC
100 Park Avenue, Suite 500
Oklahoma City, OK 73102
Phone:  (405) 702-9900
Fax:  (405) 605-8381
Email:  rleonard@leonard-law.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of September, 2018, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Brett Agee, Esq.
Garvin Agee Carlton, PC
P.O. Box 10
Pauls Valley, Oklahoma 73075
brett.agee@gaclawyers.com


S/ Ryan Leonard
Ryan Leonard