**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **(1)  PAULS VALLEY HOSPITAL AUTHORITY d/b/a PAULS VALLEY GENERAL HOSPITAL,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.:  CIV-18-826-F** |
| **(1)  NEWLIGHT HEALTHCARE, LLC, a Texas limited liability company, (2)  LTC GROUP, LLC, a Texas limited Liability company, and; (3)  FIRST UNITED BANK AND TRUST CO. an Oklahoma Domestic Bank,** | ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

**DEFENDANT NEWLIGHT HEALTHCARE, LLC's
MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT**

COMES NOW Defendant NewLight Healthcare, LLC, a Texas limited liability company ("NewLight" or "Defendant") and, in light of the apparent closure of the Pauls Valley General Hospital which could occur any day (*see* PVHA Agenda, September 5, 2018, attached as Exhibit 1), respectfully moves this Court for a temporary restraining order and preliminary injunction enjoining plaintiff Pauls Valley Hospital Authority d/b/a Pauls Valley General Hospital ("PVHA" or the "Hospital") from further diversion of NewLight's collateral in violation of the parties' Security Agreement and NewLight's properly secured interest, which is occurring presently and resulting in "irreparable harm" to NewLight.  In support of this Motion, NewLight states as follows:

1

## I.    INTRODUCTION

Plaintiff PVHA owns the local hospital in Pauls Valley, Oklahoma.  On August 15, 2018, faced with the lawful collection activities of defendant NewLight (who had managed the Hospital from November 12, 2013, through July 3, 2018, and is owed at least $982,465.83 for PVHA's breach of a promissory note and an additional $1,331,512.37 by PVHA in unpaid management fees and expenses), PVHA filed a preemptive lawsuit in the District Court of Garvin County, Oklahoma, for the sole purpose of thwarting NewLight's execution on its contractually-fixed and secured rights to obtain the accounts receivable of the Hospital following the multiple defaults of PVHA on its obligations.[1]  As set forth in "Defendants NewLight Healthcare, LLC and LTC Group, LLC's Motion to Dissolve Temporary Restraining Order and Brief in Support" filed on September 4, 2018 [Doc. No. 7],  PVHA, alleging irreparable harm in the form of imminent closure of the Hospital, obtained with its Petition filing- without notice to Defendants or opportunity for the Defendants to be heard- a Temporary Restraining Order ("TRO," Exhibit 2) from the Garvin County District Court stalling NewLight's exercise of its contractual rights to obtain its collateral following PVHA's defaults. While the state court TRO purports to "preserve the *status quo*" (which NewLight has moved to dissolve, *see* [Doc. No. 7]), in fact it does the opposite, as the TRO both improperly interferes with NewLight's contractual rights to execute on its properly secured collateral <u>and</u> has resulted in a diversion of a significant portion of PHVA's

---

[1] In addition to the amounts owed by PVHA for breach of a promissory note and past due management fees, NewLight is filing a counterclaim as of this date seeking an additional $3,460,000 to which it is entitled for PVHA's breach of the parties' Management Services Agreement, discussed *infra*.

accounts receivable to its local bank, the Pauls Valley National Bank, *a junior creditor* to NewLight, who has simply been "sweeping" the account since the imposition of the TRO at a cost of multiple hundreds of thousands of dollars to NewLight.[2]  With the apparent imminent closure of the Hospital (*see* Exhibit 1), the further diversion of PVHA's accounts receivable to its *junior creditor*, whose Vice-President is the local banker also serving on the Board of PVHA, irreparably threatens NewLight from <u>ever</u> recovering any of its properly secured collateral.   NewLight accordingly seeks the imposition of an immediate TRO, to be followed by a preliminary injunction, enjoining PVHA from:  (1) further depositing its accounts receivable (i.e., NewLight's properly secured collateral) with its *junior creditor*, Pauls Valley National Bank, and, (2) instructing that the Hospital's accounts receivable be paid directly to NewLight pursuant to its properly secured security interest or ordering that such funds be placed into escrow pending further Order of this Court.

### <u>ARGUMENT & AUTHORITIES</u>

1. **Legal Standard Governing the Issuance of a TRO and Preliminary Injunction.**

Fed.R.Civ.P. 65(b)(1) provides that "the court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A)

---

[2] One of PVHA's Board members, Patrick Grimmett, is also the Vice-President of Pauls Valley National Bank, the institution where PVHA banks and where all of NewLight's collateral (i.e. PVHA's accounts receivable) currently flows.  As set forth *infra*, even though Pauls Valley National Bank's secured lien is *junior* to NewLight's properly filed UCC lien, upon information and belief the Pauls Valley National Bank has been exercising its possessory lien to sweep PVHA's account of its accounts receivable, and then purportedly "re-lend," in contravention of NewLight's security interest, additional funds to PVHA. Upon information and belief, Pauls Valley National Bank has been conducting all of this activity that improperly circumvents NewLight's lien through "loans" <u>in excess</u> of Pauls Valley National Bank's federal legal lending limit to PVHA.

specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  The standard for obtaining a temporary restraining order is the same standard governing the issuance of a preliminary injunction.  *See Draper v. Whetsel*, 2013 WL 3462840, at *3 (W.D.Okla. July 9, 2013);  S*ee also Bankers Life & Cas. Co. v. Laycock*, 2018 WL 1046789, at *2 (D.Colo. Feb. 26, 2018) *citing Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276 (10th Cir. 2016);  *Watts v. Karmichael Family, LLC*, No. 07–cv–00638–MSK–MJW, 2007 WL 1059051, at *1 (D. Colo. Apr. 4, 2007)(motion for temporary restraining order is examined under same standards applicable to requests for preliminary injunction).  The Tenth Circuit, in *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276 (10th Cir. 2016), sets forth the factors a plaintiff must establish to obtain a preliminary injunction:  "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest."  *Id*. at 1281.  "To constitute irreparable harm, an injury must be certain, great, actual, and not theoretical."  *XTO Energy, Inc. v. Whitmire*, 2016 WL 4098874, at *2 (E.D. Okla. May 23, 2016).  "The Tenth Circuit has 'previously held that a plaintiff satisfies the irreparable harm requirement by demonstrating 'a significant risk that he or she will experience harm that

cannot be compensated after the fact by monetary damages.' " *Id. citing RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).

Additionally, as is the case here, "**[w]here secured creditors (under the UCC or otherwise) seek court intervention to maintain their position, the prospective loss of their *status quo* security interest has been held sufficient to constitute the irreparable harm needed to justify an injunction**." *Plainfield Specialty Holdings II, Inc. v. Children's Legal Services PLLC*, 634 F.Supp.2d 833, 846 (E.D.Mich. 2009)(emphasis added) *citing Tocco v. Tocco*, 409 F.Supp.2d 816, 831-21 (E.D.Mich. 2005)(enjoining the defendant from transferring or encumbering assets in which plaintiff had an interest in order to preserve the status quo); *Kredietbank N.V. v. Morris*, No. 84-1903, 1985 WL 25625, at *1 (D.N.J. Oct. 11, 1985)(observing that the court had previously granted an injunction requiring the borrower's accounts receivables to be turned over to the lender pending resolution of the lawsuit); *Cashman Equip. Corp. v. Beoufway Contractors, L.L.C.*, No. 07-3829, 2007 WL 3124704, at *4 (E.D.La. Oct. 24, 2007)(enjoining disposition of property in which plaintiff had an ownership interest pending arbitration); *see also Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940)(injunction reasonable measure to preserve the status quo and where there were allegations defendant was insolvent and its assets in danger of dissipation or depletion, as legal remedy would be inadequate). Similarly, in the case of *Cochran v. First State Bank, Keyes, OK*, 2008 WL 2781455 (W.D.Okla. July 11, 2008), the Court entered a preliminary injunction where the bank had uncontested documents creating a security interest in the proceeds of the debtor, and the evidence suggested that the debtor would

continue to use the proceeds contrary to the agreement between the debtor and the bank. *Id.* at 1-2.  Such are precisely the facts at issue here.

> **2.      NewLight Has Complied With Fed.R.Civ.P. 65 In Seeking the Imposition of a TRO Against PVHA.**

On September 7, 2018, NewLight filed its Answer to PVHA's state court lawsuit now removed, as well as a verified counterclaim against PVHA establishing the immediate and irreparable harm to NewLight that is occurring through PVHA's continued diversion of its accounts receivable to the Pauls Valley National Bank, a *junior creditor* of PVHA vis-à-vis NewLight.  In light of the now apparent closure of the Hospital which could occur any day, PVHA's final bills will shortly be issued, and its accounts receivable, i.e. NewLight's collateral, will shortly cease to be recoverable (or even exist).  The harm to NewLight is both immediate, and irreparable.  With respect to the Hospital, in the event of closure, it will not be harmed by the imposition of a TRO ceasing its deposits with Pauls Valley National Bank.  Regardless, the Hospital simply does not have the ability under the law to dissipate NewLight's collateral in contravention of NewLight's security interest following the Hospital's default.

In addition, with respect to notice to opposing counsel, this pleading is being served upon opposing counsel simultaneous with this filing.  Further, in light of the verified counterclaim and evidence contained therein, there can be no dispute that NewLight is the *superior* lienholder vis-à-vis Pauls Valley National Bank.  Both PVHA and Pauls Valley National Bank are already on notice of NewLight's *superior* security interest, yet have chosen to disregard it.  The imposition of a TRO does not harm their

interests, but merely retains the "*status quo*" and legal rights of the parties by recognizing NewLight's properly secured interest in the Hospital's collateral.

    **3.**    **NewLight Meets the Factors to Obtain a TRO and Preliminary Injunction.**

        **A.**    **NewLight Has "A Substantial Likelihood to Prevail on the Merits."**

NewLight sets forth the necessary background and basis for its claims in its Answer and Counterclaim [Doc. No. 10], Motion to Dissolve Temporary Restraining Order [Doc. No. 7] and Amended Notice of Removal [Doc. No. 4].  For the convenience of the Court, NewLight will restate the background in support of its TRO and preliminary injunction, and provide additional evidence here:

The relationship between NewLight and PVHA began following the execution of a "Management Services Agreement" between the parties dated November 12, 2013 ("MSA"), pursuant to which NewLight agreed to assume all managerial and operational duties of the Hospital.  (MSA, Exhibit 3).[3]  NewLight, based in Austin, TX, is a hospital management company that specializes in managing primarily rural hospitals in financial distress in Texas, Oklahoma and New Mexico.  Prior to NewLight and PVHA executing the MSA, PVHA had filed for Chapter 9 bankruptcy protection in March 2013 due to its inability to pay its obligations, and had recently ended its management agreement with St. Anthony's Hospital in Oklahoma City, OK.  In short, prior to the agreement with NewLight, PVHA was on the verge of financial collapse, and the Hospital faced

---

[3] The MSA was subsequently amended on November 29, 2016, and April 1, 2017.  In November 2016, the term of the MSA was extended by the parties for an additional ten (10) years, or until 2026, absent a default.

imminent closure.    In local press reports following NewLight's assumption of management responsibilities at the Hospital, NewLight was praised for its "commitment" and "generosity" to Pauls Valley, and its efforts were credited with keeping the failing Hospital "afloat."

After NewLight had managed the Hospital for almost three years, in early-2016, in response to a cash flow shortage, PVHA requested, and Newlight agreed, to temporarily defer payment of NewLight's monthly management fees and expenses owed by PVHA under the MSA.  NewLight agreed to this proposal on a short-term basis in order to allow the Hospital to shore up its finances.  NewLight's agreement to defer payment of its management fees and expeness meant that NewLight was not only foregoing payment of its fees and reimbursement of expenses in the short term, but also covering the salary, travel, expense and benefit obligations of the Hospital CEO.[4]   Shortly thereafter, in October 2016, PVHA approached NewLight about obtaining a short-term loan of $250,000 to address the Hospital's continuing cash flow issues.  NewLight loaned the requested $250,000 to the Hospital on October 4, 2016, and PVHA and NewLight entered into a Security Agreement (dated October 3, 2016) granting NewLight a Security Interest in PVHA's collateral (Security Agreement, Exhibit 4).

On December 1, 2016, still short on funds, PVHA sought additional funding from NewLight, and NewLight agreed to loan PVHA an additional $1,050,000, which is evidenced by a Promissory Note between the parties in that amount dated December 1, 2016 ("Promissory Note," Exhibit 5).   PVHA repaid the first $250,000 loan from

---

[4] The last payment made by PVHA to NewLight under the MSA was January 2016.

NewLight from the funds received through the Promissory Note.  The Promissory Note was secured by the prior Security Agreement dated October 3, 2016, which was executed by NewLight, PVHA, and defendant LTC Group, which was subsequently amended by a First Amendment to Security Agreement dated December 1, 2016 (attached as Exhibit 6)(collectively referred to as the "Security Agreement").  To perfect the lien granted by PVHA in the Security Agreement, NewLight filed a UCC-1 financing statement on October 12, 2016 (October 2016 UCC-1 financing statement, attached as Exhibit 7).  An amended UCC-1 financing statement was recorded by NewLight on December 28, 2016, expanding the description of the accounts receivable collateral covered to mirror the expanded description of the collateral contained in the First Amendment to Security Agreement (Amended UCC-1 financing statement, attached as Exhibit 8).  Pursuant to the terms of the Promissory Note, the entire unpaid principal and accrued and unpaid interest was due and payable on December 1, 2017.

By April 2018, with the situation long-since having become untenable, PVHA's outstanding balance on the Promissory Note owed to NewLight totaled $1,193,763.54, and past due management fees and expenses under the MSA totaled $1,584,254.62, <u>for a total amount due and owing by PVHA to NewLight of $2,778,018.16</u> (this amount does not include an additional $3,460,000 now owed to NewLight for PVHA's breach of the MSA).  On April 16, 2018, NewLight sent PVHA a "Notice of Maturity and Events of Default" (attached as Exhibit 9) which notified PVHA of its default on its obligations under the Promissory Note and MSA, and made demand for payment in full of all obligations owed by PVHA to NewLight.  No funds were paid by PVHA in response to

this April 2018 Notice, but NewLight did send out one account debtor demand letter, in accordance with its rights set forth in and the terms of the Security Agreement, and received funds from The City of Wynnewood. Continuing its desire to want to assist PVHA, NewLight and PVHA agreed to apply $180,000 of the funds received from Wynnewood towards the outstanding balance on the Promissory Note, but NewLight voluntarily agreed to allow PVHA to retain approximately $57,000 of funds to which NewLight was entitled to be used for continued operations of the Hospital.

At the end of April 2018, PVHA informed NewLight that the Hospital was likely to shut down, and that PVHA was trying to find a buyer or new financing for the Hospital. PVHA requested that NewLight continue its management of the hospital (with continued deferred pay), as well as continue to allow the Hospital to use NewLight's properly secured collateral (the accounts receivable) to allow the Hospital to continue operations and avoid a shutdown. NewLight agreed to this proposal on a short-term basis, with the hope that this assistance would allow PVHA to find a buyer or obtain new financing. In late May 2018, PVHA informed NewLight that it was working on financing or a buy-out with Alliance Healthcare Partners Oklahoma ("Alliance"), and asked that Newlight work with Alliance to allow continued use of the Hospital's accounts receivable for operations to avoid closure of the Hospital. Again, in order to allow PVHA additional time to obtain new financing, NewLight agreed.

After the passage of several more weeks, in June 2018, Alliance and PVHA still had not made the anticipated offer to buy out Newlight or obtain its secured position from new financing, and PVHA continued to make no payments on the matured Promissory

Note and MSA delinquencies.  As a result, on June 26, 2018, NewLight sent PVHA a "Notice of Maturity and Events of Default, Notice of Termination of Right to Use Funds Collected From Accounts Receivables, and Demand for Turnover of Accounts Receivable Payments Collected to PVHA" (attached as Exhibit 10), reiterating the notice and demand previously made on April 16, 2018, and giving notice of the termination of PVHA's right to use the accounts receivable and proceeds covered by NewLight's secured lien, and further demanding that all such funds be remitted to NewLight as provided by the Security Agreement.  Again, PVHA did not comply with NewLight's June 26 notice, sent no payments to NewLight and, contrary to the terms of the Security Agreement, did not cease use of the accounts receivable.

After not having been paid for managing the Hospital for more than eighteen (18) months, Newlight informed PVHA that it would cease its management duties as of July 3, 2018.  Alliance assumed management duties of the Hospital on that date, and continues to manage the Hospital, all while improperly utilizing NewLight's secured collateral to continue operations.

During the month of July 2018, PVHA continued its refusal to make any payments towards its obligations under the Promissory Note or MSA.  On July 30, 2018, NewLight sent notice to Pauls Valley National Bank notifying the bank of PVHA's defaults and the termination of PVHA's right to use the accounts receivable.  (Notice to Pauls Valley National Bank, attached as Exhibit 11).  NewLight further requested that the bank forward those funds to Newlight or, if the bank would not do so, to hold those funds and to neither take the funds itself, nor allow use of the funds by PVHA, whose right to use

11

the funds had been terminated by NewLight.  Pauls Valley National Bank ignored this notice, and continues to do so.

On July 31, 2018, due to PVHA's continuing and uncured defaults, NewLight sent a further "Notice Of Private Sale Of Disposition Of Collateral Pursuant To The Uniform Commercial Code-Secured Transactions" to PVHA (attached as Exhibit 12), providing written notice in accordance with Section 7.2(d) of the Security Agreement (and applicable provisions of the UCC) that NewLight was providing twenty (20) days written notice that it intended to conduct a private foreclosure sale of the "collateral" at any time after August 20, 2018.  This Notice was also sent to other lienholders of the Hospital in accordance with UCC requirements, despite the specific representation by PVHA set forth at Section 4.6(b) of the Security Agreement that there were no other effective liens against the Collateral (a misrepresentation by PVHA because it was not true), as well as the covenant contained at Section 6.1 of the Security Agreement that PVHA would defend the collateral against the claims and demands of all parties other than NewLight.

On August 8, 2018, in accordance with its rights set forth at Sections 6.7 and 7.2(b) of the Security Agreement, NewLight sent 105 letters to the account debtors of PVHA notifying them of NewLight's enforceable lien on PVHA's accounts receivable, PVHA's defaults on its obligations to NewLight and NewLight's exercise of its right to have payment made directly to it by the account debtors of PVHA.  Following the imposition of the improper TRO, PVHA contacted its account debtors instructing them to disregard NewLight's notice.

On August 9, 2018, NewLight sent a final "Notice of Maturity and Events of Default, Notice of Termination of Right to Use Funds Collected From Accounts Receivables, and Demand for Turnover of Accounts Receivable Payments Collected" to PVHA, reiterating the notices and demands previously made, reiterating notice of the termination of PVHA's right to use accounts receivable and proceeds covered by NewLight's lien and again demanding remittance of all such funds to NewLight (attached as Exhibit 13). Notwithstanding NewLight's multiple notices, PVHA has not sent any payments and PVHA, Alliance and others continue to use NewLight's collateral in violation of NewLight's contractual rights and the law. The amounts due and owing NewLight identified in the final Notice of August 9, 2018, remain unpaid, and interest continues to accrue on the outstanding principal balance on the Promissory Note and MSA deficiencies. As of August 9, the amount due and owing in principal and interest on the Promissory Note totals $982,465.83, and the amount due and owing for management fees and expenses under the MSA totals $1,331,512.37, for a combined total outstanding owed to NewLight of $2,313,978.20.

On August 10, 2018, NewLight sent a further "Demand for Financial Information and Records Access to PVHA" (attached as Exhibit 14) reiterating its prior notices and demands, and notifying PVHA of NewLight's exercise of its right to delivery of financial information and documents, to inspect its collateral, to audit and copy PVHA's books and records pursuant to the terms of the Security Agreement and requesting that NewLight's visit to accomplish this take place on August 16, 2018. In response, and to prevent NewLight's foreclosure on its accounts receivable collateral consistent with the terms of

the Security Agreement, on August 15, 2018, PVHA filed the Petition in Garvin County and obtained a TRO without providing NewLight notice of the filing or opportunity to attend a hearing that barred NewLight's further collection efforts.

An Oklahoma UCC search for PVHA dated August 24, 2018, reflects the filing of NewLight's financing statement covering the Security Agreement (Exhibit 4) on October 12, 2016, and the subsequent First Amendment to Security Agreement (Exhibit 6) filed on December 28, 2016.  (Oklahoma UCC Search dated August 24, 2018, Exhibit 15).  The Oklahoma UCC Search further reveals Pauls Valley National Bank's *junior security interest* filed on December 29, 2017.  (*See* Exhibit 15).

Upon information and belief, since the imposition of a temporary restraining order ("TRO") by the District Court of Garvin County, Oklahoma, on August 15, 2018, the imposition of the TRO has not resulted in the sequestration of any of PVHA's accounts receivable or a preservation of the "*status quo*," but rather has allowed the Pauls Valley National Bank, whose Vice-President sits on the Board of Directors of PVHA, to "sweep" PVHA's account at the Pauls Valley National Bank to apply PVHA's accounts receivables to the bank's *junior* secured lien, frustrating NewLight's superior lien.  In addition, upon information and belief, Pauls Valley National Bank has been "re-lending" additional funds (likely unsecured) to PVHA since the imposition of the TRO, all of which is in contravention of NewLight's security interest in its collateral.  Finally, Pauls Valley National Bank is undertaking such activities, upon information and belief, in violation of its federal lending limit to PVHA.  These activities are occurring despite the fact that PVHA held a hearing on September 5, 2018, in which consideration of

14

immediate closure of the Hospital was on the agenda. The continued actions of PVHA, in conjunction with Pauls Valley National Bank, is causing immediate and irreparable injury, loss and damage to NewLight.

In short, PVHA in its state court Petition does not dispute that it is indebted to NewLight under the terms of the Promissory Note or MSA. While NewLight maintains that the cursory and unsupported allegations of "mismanagement" within PVHA's Petition are wholly unfounded, such allegations- and any recovery by PVHA, however unlikely- exist separately from PVHA's undisputed indebtedness to NewLight. PVHA should not be allowed, having raised these allegations of "mismanagement" for the first time despite NewLight having managed the Hospital for almost five (5) years (which management PVHA was pleased with enough to extend for an additional ten (10) years in 2016), to rely upon unfounded and unsupported allegations to accomplish a diversion of its dwindling and finite accounts receivable to its local bank, whose Vice-President sits on the Board of PVHA, at the expense of the properly secured *superior creditor*, NewLight. The evidence plainly establishes that NewLight is substantially likely to prevail on the merits of its claims.

### B. NewLight Will Be "Irreparably Harmed" Unless the TRO Is Issued.

Having managed the Hospital for almost five (5) years, NewLight is intimately familiar with the collection of the Hospital's accounts receivables. Currently, the vast majority of the Hospital's payors deposit funds owed to the Hospital directly into its account with Pauls Valley National Bank. Since July 30, 2018, Pauls Valley National Bank has ignored NewLight's termination of PVHA's rights to use NewLight's collateral

(*see* Exhibit 10), and "swept" the funds deposited at the bank to satisfy PVHA's *junior* obligations owed to the bank.  While such action directly <u>violates</u> NewLight's secured interest in the collateral of PVHA, in light of the imminent closure of the Hospital and finite lifespan of future accounts receivable, PVHA's continued deposits of its account receivables at Pauls Valley National Bank permanently and irreparably impairs NewLight's ability to obtain its properly secured collateral.  *See Plainfield Specialty Holdings II, Inc. v. Children's Legal Services PLLC*, *supra*, 634 F.Supp.2d 833, 846 (E.D.Mich. 2009); *Tocco v. Tocco*, *supra*, 409 F.Supp.2d 816, 831-21 (E.D.Mich. 2005); *Kredietbank N.V. v. Morris*, *supra*, No. 84-1903, 1985 WL 25625, at *1 (D.N.J. Oct. 11, 1985); *Cashman Equip. Corp. v. Beoufway Contractors, L.L.C.*, *supra*, No. 07-3829, 2007 WL 3124704, at *4 (E.D.La. Oct. 24, 2007); *Deckert v. Independence Shares Corp.*, *supra*, 311 U.S. 282, 290 (1940);  *Cochran v. First State Bank, Keyes, OK*, *supra*, 2008 WL 2781455 (W.D.Okla. July 11, 2008).  Simply stated, without a TRO and preliminary injunction, once the Hospital closes, the accounts receivable, i.e. NewLight's collateral, will disappear, and NewLight will be left without recourse.

### C.   The Threatened Injury to NewLight Outweighs the Potential Harm to PVHA.

While NewLight is threatened with "irreparable harm" in the form of vanishing accounts receivable, in light of the imminent closure of the Hospital, there is no harm to PVHA.  Even while the Hospital continues to operate in its last days, it simply does not have the legal right to completely abrogate and ignore NewLight's security interest.

Additionally, there is no harm to PV Bank, as it will retain its *junior* security interest. The threatened injury to NewLight plainly outweighs any potential harm to PVHA.

### D.    The Injunction Will Not Adversely Affect the Public Interest.

The public interest is served when the rights of a properly secured creditor are protected.   In this instance, NewLight's rights to execute on its properly secured collateral upon the default of PVHA have been:  (1)  completely ignored by PVHA, (2) completely ignored and circumvented by Pauls Valley National Bank, and (3) thwarted through the imposition of a state court TRO, without notice to NewLight or without the opportunity to be heard, that allowed PVHA to have, in effect, unfettered access to its accounts receivable through its special "re-lending" relationship with Pauls Valley National Bank.  The public interest is certainly not served when a creditor's *superior* lien interests are trampled upon by a debtor.

### CONCLUSION

In sum, if a TRO and preliminary injunction are not issued, the debtor, PVHA, will continue to dissipate NewLight's properly secured collateral, the accounts receivable will shortly disappear, and what remains of the accounts receivable will be diverted by PVHA to a *junior creditor*, Pauls Valley National Bank, whose Vice-President sits on the Board of PVHA.  With the closure of the Hospital now apparently imminent, NewLight will have no recourse to recover on PVHA's obligations, and will be irreparably harmed. Given the current actions of PVHA, imposition of a TRO and a preliminary injunction is the only manner in which NewLight's properly secured security interest will be recognized.

WHEREFORE, for the reasons stated herein, defendant NewLight respectfully requests that a temporary restraining order be immediately entered, to be followed by a preliminary injunction, enjoining PVHA from:   (1) further depositing its accounts receivable (i.e., NewLight's properly secured collateral) with its *junior creditor*, Pauls Valley National Bank, and, (2) instructing that the Hospital's accounts receivable be paid directly to NewLight pursuant to its properly secured security interest or ordering that such funds be placed into escrow pending further Order of this Court.

Respectfully Submitted,


S/ Ryan Leonard
Ryan Leonard, OBA #19155
Edinger, Leonard & Blakley, PLLC
100 Park Avenue, Suite 500
Oklahoma City, OK 73102
Phone:  (405) 702-9900
Fax:  (405) 605-8381
Email:  rleonard@leonard-law.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of September, 2018, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Brett Agee, Esq.
Garvin Agee Carlton, PC
P.O. Box 10
Pauls Valley, Oklahoma 73075
brett.agee@gaclawyers.com


S/ Ryan Leonard
Ryan Leonard