### Pauls Valley General Hospital
### MANAGEMENT SERVICES AGREEMENT

This Management Services Agreement (the "**Agreement**") is made and entered into effective as of the 12th day of November, 2013 ("**Effective Date**") by and between **NewLight Healthcare, LLC** a Texas limited liability company **or its assignee** ("**Manager**"), and **Pauls Valley Hospital Authority,** a Public Trust Authority ("**Owner**").

W I T N E S S E T H:

WHEREAS, Owner owns and operates a licensed, Medicare certified PPS hospital named Pauls Valley General Hospital located at 100 Valley Drive, Pauls Valley, OK 73075("Hospital"); and

WHEREAS, Manager is in the business of managing and providing administrative services to hospitals; and

WHEREAS, Owner desires to contract with Manager for the active, daily operation and full service management of Hospital; and

NOW, THEREFORE, for and in consideration of the premises and the mutual covenants herein contained, the receipt and adequacy of which are for all purposes acknowledged and confessed herein, Owner and Manager hereby agree as follows:

1.  **Appointment and Authority**.

    1.1.  <u>Appointment</u>.  Owner hereby appoints Manager as the sole and exclusive manager and administrator of the Hospital to perform the management and administrative services and duties listed herein for Hospital during the Term, and Manager hereby accepts such appointment, subject at all times to the terms and provisions set forth herein.  Owner understands and agrees that Manager may have other clients and provides management services to other hospitals and entities, so that Manager is not and shall not be obligated to provide management services solely to Hospital.  Manager shall be the exclusive management company providing management and administrative services to Hospital during the Term.

    1.2.  <u>Authority</u>.  Owner herby grants Manager all necessary authority to coordinate, supervise, oversee and perform the management, administrative and consulting services, and duties set forth herein.  Manager is expressly authorized to provide such services in any reasonable manner Manager deems appropriate to perform such services and duties, including utilizing third parties and vendors to provide services to the Hospital.  Unless an expense is expressly designated as a Manager Expense in this Agreement, all expenses

1

incurred by Manager in providing management services pursuant to this Agreement shall be Hospital Expenses.

1.3. Hospital Control.  It is expressly acknowledged and agreed by the parties that Owner has, and at all times during the Term shall exercise, the ultimate control and direction of the assets and affairs of Hospital, including, without limitation, all medical, administrative and professional matters of Hospital as may be set forth by the Hospital's Board of Directors ("Board").  Owner has the ultimate responsibility for supervision, management and operation of the Hospital, which includes, but is not limited to, adopting and approving policies of the Hospital and reviewing the performance of Manager in the performance of its services under this Agreement.

1.4. Independent Contractors.  In performing their respective duties hereunder, the parties shall be and shall act as independent contractors, and nothing in this Agreement is intended and nothing shall be construed to create an employer-employee relationship, partnership, joint venture, or other type of relationship, or to allow any party to exercise control or direction over the manner or method by which the other party performs the services that are the subject of this Agreement. The parties acknowledge and agree that (i) no employee of one party will be treated as an employee of the other party for federal income tax purposes, (ii) no party will withhold on behalf of the other  party any sums for income tax, unemployment insurance, social security, or any other withholding pursuant to any law or requirement of any governmental body, or make available any to any employee of the other party any of the benefits afforded to its own employees, (iii) all of such payments, withholdings, and benefits, if any, are the sole responsibility of the party incurring the liability, and (iv) each party will indemnify and hold the other parties harmless from any and all loss or liability arising with respect to such payments, withholdings, and benefits, if any.

1.5. No Authority to Bind.  Neither party will have the authority to bind the other party, contractually or otherwise, except as specifically authorized in this Agreement.

1.6. Judgments in Good Faith Proper.  Notwithstanding any other provisions contained herein to the contrary, in no event shall Owner, or any manager, officer, employee or member of Owner make any claim against Manager on account of any alleged errors of judgment made in good faith in connection with the performance of Manager's services under this Agreement.

1.7. Patient Referrals. The parties agree that the benefits to Owner do not require, are not payment for, and are not in any way contingent upon

2

the admission, referral or any other arrangement for the provision of any item or service to any of Hospital's patients.

2. **Manager's Responsibilities.**  Manager shall use commercially reasonable efforts to provide the management, consulting and administrative services set forth in this Section 2 on a full-time basis.

2.1. General Responsibility.  Manager shall implement and carry out all aspects of the administrative operation of Hospital and Owner hereby grants to Manager the commensurate authority for all such activities. Manager shall comply with the written policies and procedures of the Owner provided that, if the Owner fails to establish such policies or procedures, Manager will prepare and implement such policies and procedures as Manager reasonably deems necessary or appropriate, and, to the extent permitted by applicable law, Owner is deemed to approve such changes until such time as new policies and procedures are approved by Owner.

2.2. Recruiting Key Personnel.  If requested by Owner in writing, Manager shall assist Owner with the recruitment and screening of candidates for any open CEO position or other key employees.  Unless otherwise agreed by the parties in writing, the CEO shall be an employee or contractor of Owner and shall report to the Owner.  All costs relating to the employment of, or contracting with, the CEO shall be Hospital Expenses.

2.3. Interim CEO and CFO.  If requested by Owner in writing, Manager shall use its good faith efforts to provide an interim CEO and/or or other key employees to Hospital until such time as any such position is filled on a full-time basis.  Owner shall compensate Manager for any such interim CEO or other key employees as set forth in Section 5.5.

2.4. Contracts.  Manager shall advise and assist Owner in securing and retaining contracts in the name of and for the account of Owner with service providers deemed reasonably necessary by Manager for the operation of the Hospital.  Such contracts shall be subject to the written approval of the Owner and shall in each case be a Hospital Expense.

2.5. Provider Recruitment.  If requested by Owner in writing, Manager shall use Manager's reasonable efforts to advise Hospital on and assist Hospital with recruiting additional qualified physicians and mid-level practitioners (collectively, "Providers") to establish medical practices in the community served by Hospital to meet community needs and promote the utilization of Hospital services.  Such efforts may include, but are not limited to, the following:

a. Institution of a Provider need program by reviewing admitting records by physician specialty;

3

b.    Identification and screening of potential candidates;

c.    Personal contact with Providers desirous of relocating to the community served by Hospital; and

d.    Introduction of such Providers to members of Hospital's Medical Staff and applicable Hospital executives during interview trips.

The notice to Manager requesting the services in this Section shall include a budget for providing such services, and Manager shall not incur any costs in excess of such budget without Owner's written approval.   Any costs incurred in the recruitment of such Providers (such as Provider moving expenses, travel, loans and income guarantees) shall be a Hospital Expense.

2.6.    <u>Purchasing</u>.  Manager shall assist Hospital in ordering, procuring, and purchasing inventory and supplies, and such other ordinary, necessary or appropriate materials, items or services which Manager or Owner deem to reasonably necessary in the operation and maintenance of the Hospital, including, without limitation, utilities, concessions, drugs, equipment, expendable supplies, furniture or furnishings, inventory items, linens, machinery, medicines, services and supplies, which shall be subject to approval or within guidelines provided by Owner.  Any purchase by Manager in the performance of services under or otherwise ancillary to this Agreement shall be a Hospital Expense. Manager and Owner agree that Manager is not a "Merchant" as defined in the Uniform Commercial Code as adopted in the State of Texas and that MANAGER MAKES NO WARRANTIES, EXPRESSED OR IMPLIED WITH RESPECT TO ANY PURCHASE MADE ON OWNER'S BEHALF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF FITNESS FOR PARTICULAR PURPOSE OR MERCHANTABILITY.

2.7.    <u>Maintenance and Repair</u>.  Manager shall make, install or cause to be installed in the Owner's name and at the Owner's expense all reasonably necessary repairs, replacements, additions and improvements in and to Hospital, its furnishings and equipment, in order to keep and maintain the same in good repair, working order and condition in the same general manner as other hospitals of a similar nature in the geographic area in which the Hospital is located, subject to approval or guidelines provided to Manager by Owner in writing.

2.8.    <u>Regulatory and Contractual Requirements</u>. Unless otherwise requested by Owner in writing, Manager shall cause all things to be done in and around Hospital as Manager deems necessary to comply with the requirements of any applicable law or statute, ordinance, rule, regulation or order of any governmental or regulatory body respecting the use of Hospital or the construction, maintenance, or operation

thereof, and with all orders and requirements of the local Fire Marshall or any other similar authority.  Unless otherwise requested by Owner in writing, Manager shall further provide or arrange for the performance of duties with respect to the operation of Hospital required by any applicable standard, ruling or regulation of the United States Department of Health and Human Services, the Department of Health of the State, or of any other governmental agency, or entity exercising authority to administer, regulate, accredit or otherwise set standards for facilities such as Hospital subject to approval or guidelines provided to Manager by Owner in writing.

2.9.   Insurance.  Manager shall periodically review the insurance program of Hospital and make recommendations with respect thereto to Owner. Subject to the prior approval of Owner, with Manager acting as agent for and at the expense of Owner, Manager shall assist Hospital in the negotiation of any contracts for and maintenance of all reasonable and appropriate policies of insurance on an occurrence basis of the type, extent, amount and cost of coverage which is consistent with sound management of the Hospital, insuring Owner, Manager and Hospital and their respective agents and employees against the risks customarily insured, consistent with reasonable industry standards. Such insurance shall include, without limitation, property and casualty coverages for buildings and contents, comprehensive general liability, professional liability, blanket fidelity bond coverage, boiler explosion, comprehensive automobile liability, statutory workers' compensation coverage, business interruption and excess liability coverage, which coverage shall name Manager as an additional named insured to the extent the interest of Manager appears.   Upon written request, Manager shall timely provide Board with a certificate or certificates issued by such insurers evidencing such insurance, which certificate or certificates shall be cancelable only upon not less than 30-day prior written notice of insurer to Manager and Owner.

2.10.  Legal Services. If requested by Owner in writing, Manager shall assist Owner and Hospital in selecting, contracting for, arranging for and/or rendering to Hospital, with the approval of the Board, such business, legal and financial management consultation and advice as may be reasonably required or requested by Hospital and directly related to the operation of the Hospital.  Manager shall not be responsible for rendering any legal advice, tax advice, or personal financial services to Hospital or Owner related to its independent corporate existence or affairs or to any employee or agent of Hospital.  Within the limits of Manager's knowledge and expertise and as Manager deems appropriate, Manager shall assist Owner in retaining legal counsel and supporting such counsel in instituting or defending, as the case may be, in the name of Owner or Hospital as a Hospital Expense, all actions arising out of the operation of Hospital, and any and all legal actions or proceedings reasonably necessary for the operation of Hospital.  Any

5

such legal and attorney fees and costs shall be a Hospital Expense. Manager shall cooperate with such counsel to the extent permitted by applicable law.  Manager shall not be required and shall not be deemed to have guaranteed any obligation or expense of Owner, even if Manager contracts for particular goods or services on Owner's behalf.

2.11. <u>Third Party Payment Programs and Cost Reports</u>.   Manager shall oversee and ensure the preparation and timely filing of all claims, cost reports, or other documentation required by the Medicare Program, Medicaid Program, and any other third-party payor for the operations of the Hospital during the Term.  Owner will continue to be responsible for signing Medicare and Medicaid cost reports.  Owner shall remain solely liable for any underpayments, overpayments, recaptures, charges, assessments, actions, payments or penalties, legal or otherwise, involving claims filed with any third party payment program, whether such actions, payments or penalties are incurred prior to, during, or after the Term.

2.12. <u>Financial Services.</u>

a. <u>Financial Consulting Services</u>.    Manager shall oversee the following services:

   i. Monthly financial statement preparation as detailed in Sections 2.13(b) below;

   ii. Monthly analysis of financial performance;

   iii. Budget preparation as described in Section 2.13(g) below;

   iv. Financial analysis of existing and proposed service lines;

   v. Liaison with Hospital's outside audit firm as indicated;

   vi. General oversight of Hospital's employees involved in financial transaction including accounts payable staff, payroll staff and other financial services employees;

   vii. Bank and balance sheet account reconciliation services and review of reconciliations;

   viii. Services relating to any ad hoc information needs of the Hospital;

   ix. Accounts payable invoice processing pursuant to Section 2.13(d);

6

       x.     Cash receipts reconciliation with Hospital's bank accounts; and

       xi.    Payroll processing services pursuant to Section 2.13(d).

b.    <u>Financial Information</u>.  Manager shall oversee the preparation of the following financial information on a monthly basis:

       i.     Balance Sheet;

       ii.    Income Statement; and

       iii.   Other relevant financial and operational reports.

c.    <u>Credits and Collections</u>.  Manager shall develop and implement credit and collection policies and procedures and take reasonable steps to effectuate timely billing by Hospital, including, without limitation, the issuance of bills for items and/or services furnished by Hospital, the collection of accounts and monies owed to Hospital, including the institution of legal proceedings by Owner and/or Hospital to collect such accounts and to enforce the rights of Owner as creditor under any contract or in connection with the rendering of any service all as a Hospital Expense.  It is expressly understood that the extent to which Manager will endeavor to collect such accounts, the methods of collecting, the settling of disputes with respect to charges and the writing off of fees that may be or appear to be uncollectible shall be at the reasonable discretion of Manager, and Manager does not guarantee that extent to which any accounts or monies billed will be collected.

d.    <u>Payment of Accounts and Indebtedness</u>. Within the limits of Manager's knowledge and expertise, Manager shall assist Hospital with and oversee the processing and payment of accounts payable including preparing and transmitting checks, vouchers and other documents necessary for the payment of payroll, trade accounts, amounts due on short and long-term indebtedness, taxes, rents and other obligations of Hospital. Owner shall remain ultimately responsible for all amounts due pursuant to these accounts and indebtedness.

e.    <u>Accounting and Financial Records</u>.  Manager shall reasonably establish and administer accounting procedures, controls, forms, and systems for the development, preparation and safekeeping of records and books of accounting relating to the business and financial affairs of Hospital. Manager shall assist Hospital with bookkeeping and accounting services required for the operation of the Hospital.  Such services will include (a) the maintenance, custody and supervision of business records, papers,

7

documents, ledgers, journals and reports relating to the business operations of the Hospital; (b) the preparation of the financial reports set forth in Section 2.13(b); (c) the planning of the business operations of the Hospital; and (d) the payment of accounts payable and collection of accounts receivable.

f.   Depositories for Funds.   Manager shall maintain accounts and investments in such banks, savings and loan associations, and other financial institutions as Manager may reasonably select, with such balances therein (which may be interest-bearing or non-interest bearing) as Manager deems appropriate, taking into account the cash flow operating needs of Hospital and Owner's desire to maintain as much of its funds in interest bearing accounts as is reasonably feasible, and the disbursement from such accounts of such amounts of Hospital's funds as Manager shall reasonably determine to be appropriate in the performance of Manager's services under this Agreement.

g.   Budget.   Not later than the end of each fiscal year of Owner during the Term, Manager shall prepare in advance and deliver to Owner for Owner's approval a capital expenditure and operational budget for the Hospital's next fiscal year (the "Budget") outlining a program of capital expenditures for the next fiscal year (in which each proposed expenditure will be designated either as mandatory or desirable) and setting forth an estimate of operating revenues and expenses (including, without limitation, the Management Fee), together with an explanation of anticipated changes in the Hospital utilization, charges to patients, payroll rate and positions, non-wage cost increases, and all other factors differing significantly from the current fiscal year.   Upon approval by the Owner, the Budget shall become the "Approved Budget".   Owner's approval of the Budget shall not be unreasonably withheld or delayed.   Manager shall use commercially reasonable efforts to operate Hospital in accordance with the Approved Budget.   The inclusion of any item within the Approved Budget shall constitute all necessary approval of the Owner for Manager to take such actions to effect the budgeted item.

h.   Access.   Owner shall have the right to reasonably audit, examine and make copies of books of accounts maintained by Manager applicable to Hospital.   Such right may be exercised through any agent or employee designated in writing by Owner and acceptable to Manager.

2.13.   Managed Care Contract Consulting. If requested by Owner in writing, Manager shall assist in the negotiation of and administration of all contracts with managed care organizations, health maintenance

8

organizations, accountable care organizations, prepaid health plans, preferred provider organizations, self-insured employers, insurance companies, and other payors relating to the provision of Hospital services. Manager may recommend the use of a managed care contracting consultant or that Hospital join a particular network in order to assist with managed care contracting. The decision to engage any particular consultant or join any particular network is solely Owner's decision, and all associated costs and fees shall be a Hospital Expense.

2.14. <u>Licenses and Permits</u>. Manager shall oversee and ensure obtaining and renewal of , all necessary licenses and permits required in connection with the operation of the Hospital. Any such licenses and permits shall be issued in the name of the Owner or Hospital, as applicable. All fees and expenses incurred in connection with such licenses and permits shall be a Hospital Expense.

2.15. <u>Information Systems</u>. Manager shall supervise and manage the use of any and all software and/or hardware for the management information system utilized in the operations of the Hospital, provide modifications, enhancements and upgrades and provide new hardware and/or software to the extent reasonably necessary or appropriate. All right title and interest in any management information system or other software provided by Manager to Hospital shall remain Manager's sole and exclusive property.

2.16. <u>Advertising and Public Relations</u>. Manager shall provide marketing support services and assistance with community education to Hospital.. From time to time, Manager shall recommend to the Board various advertising and public relations initiatives subject to approval by the Board . All Board approved advertising, public relations and related marketing expenses incurred on behalf of Hospital shall be a Hospital Expense.

2.17. <u>Quality Assurance, Performance Improvement, Risk Management and Utilization Review</u>. Manager shall oversee and ensure support of Owners quality assurance, performance improvement, risk management and utilization review plans. The costs of such programs as may be authorized by the Board shall be a Hospital Expense.

2.18. <u>Strategic Planning</u>. Manager will assist Hospital and Owner in the development of long-term strategic planning objectives.

2.19. <u>Use of Premises</u>. Owner hereby grants Manager the right to use and occupy administrative offices within the Hospital and such other portions of the Hospital premises as may reasonably be required to provide Manager's services under this Agreement. Manager agrees to comply in all material respects with all applicable local rules,

9

ordinances, and other laws in the performance of its services under this Agreement.

2.20. Events Excusing Performance.  Manager shall not be liable to Hospital for failure to perform any of the services required herein in the event of strikes, lock-outs, calamities, acts of God, unavailability of supplies, or other events over which Manager has no control for so long as such events continue, and for a reasonable amount of time thereafter.

2.21. Additional Services.  In addition to the duties and obligations specified in this Section 2, upon the request of the Board and agreement by the Manager, Manager may perform additional services for such additional compensation mutually agreed upon in writing by Owner and Manager (which writing shall be deemed to be an addendum to this Agreement and incorporated herein).

2.22. Limitation on Manager's Obligations.  The parties acknowledge and agree that, notwithstanding Manager's agreement to ensure, implement, administer or otherwise perform any obligation under this Agreement, Manager shall only be obligated to perform such obligation to the extent such obligation is within the Manager's reasonable control.

## 3.   Personnel Matters.

3.1. Personnel Administration.  Manager shall use commercially reasonable efforts to  advise and assist Owner with respect to recruiting, hiring, training, promoting, assigning, supervising and discharging the medical, nursing, administrative, and any other staff of Hospital. Manager shall also use reasonable efforts to advise and assist Owner with respect to the formulation, implementation, modification and administration of wage scales, rates of compensation, employee benefits, rates and conditions of employment, in-service training, attendance at seminars or conferences, staffing schedules, job descriptions and personnel policies with respect to all staff of Owner and/or Hospital.  Manager, in the name of Owner and following consultation with the CEO, as appropriate, may hire, discharge and supervise the work of all employees of Owner performing services in or about Hospital.  All salary, employee benefits, liability insurance, bonding and all other expenses, fees or costs of any kind related to such employees shall be a Hospital Expense.  Subject to Owner's prior approval, the term "employee benefits" shall include any and all of the employer's contribution to F.I.C.A., unemployment compensation, and other employment taxes, vacation or other paid time off, all bonuses, pension plan contributions (if one), workers' compensation, group life, accident, and health insurance premiums, disability, health, welfare and other benefits, exclusive of any deferred compensation or stock plan absent the prior written approval of Owner.  Notwithstanding the

10

foregoing, Owner may independently employ, at Owner's own cost and expense, one or more employees, provided that such employees comply with all Hospital policies and assist in servicing Hospital, if needed, on a limited basis and not as a Hospital Expense. Under no circumstance shall Manager be liable to Owner, Hospital, or any third party in monetary damages or otherwise for any act or omission on the part of any person not a direct employee of Manager.

3.2.   CEO.  If requested by Owner in writing, Manager shall recruit a CEO for Hospital who shall become an employee of Owner. Owner shall pay the CEO's salary, benefits and out-of-pocket expenses. Any and all payments required by this Section shall be a Hospital Expense.

3.3.   Additional Key Employees.  If requested by Owner in writing, Manager shall recruit a Chief Financial Officer or other key employee (each a "Key Employee") who shall become an employee of Owner and all costs of the aggregate compensation, including all fringe benefits, paid or payable with respect to such Key Employees shall be solely a Hospital Expense.

3.4.   Equal Employment Opportunity.  Manager and Owner expressly agree to abide by any and all applicable federal and/or state equal employment opportunity statutes, rules, and regulations, including, without limitation, Title VII of the Civil Rights Act of 1964, the Equal Employment Opportunity Act of 1972, the Age Discrimination in Employment Act of 1967, the Equal Pay Act of 1963, the National Labor Relations Act, the Fair Labor Standards Act, the Rehabilitation Act of 1973, and the Occupational Safety and Health Act of 1970, all as may be from time to time modified or amended.

4.   **Owner's Obligation.**   Owner hereby agrees to comply with all of the provisions of this Agreement and with all obligations of Owner and Hospital as otherwise herein set forth. In addition:

4.1.   Budget.  Owner shall promptly review and approve Budgets for the operation of the Hospital.  Owner shall also provide reasonable working capital funds for the Hospital and shall advance and provide funds in amounts sufficient to cover reasonable operating expenses set forth in the Approved Budget or otherwise expressly approved by Owner.

4.2.   Communications regarding Financial, Contracts and Other Necessary Documents.  Owner agrees to promptly provide copies to Manager of any communications relating to financial, contractual, legal, or other obligations of the Hospital in any way relating to the services provided by Manager under this Agreement.

4.3.   Legal Obligations.  Owner retains full responsibility for all Hospital matters relating to any acts, events, misconduct or omissions resulting

in any liability, in any form whatsoever, including but not limited to liability for legal, financial or contractual obligations, any and all state and federal legal and regulatory compliance matters, billing and claims, and third party claims against Hospital and/or Owner. The Owner retains full responsibility regardless of whether such actions occurred prior to, during, or following the Term, unless such liability was incurred by the Hospital due to gross negligence or fraud committed by Manager. In the event that Manager is named in a matter for which Owner retains full responsibility, Owner shall fully indemnify, and advance reasonable attorneys fees to, Manager for any costs or expenses related thereto.

4.4. <u>License of Hospital's Name and Logo</u>.   Owner hereby grants to Manager the nonexclusive right and license to use Hospital's name and logo solely to the extent required to provide Manager's services under this Agreement.

4.5. <u>Patient Records</u>.   At all times during and after the Term of this Agreement, all patient medical records shall be and remain the sole property of Hospital, and Owner agrees to make such records available to Manager to the extent required for Manager to perform its services under this Agreement.  To the extent permitted by law, Manager shall be permitted to retain copies of such records, at its expense, upon termination of this Agreement.

4.6. <u>Inspections</u>.   Owner shall, during and after the Term of this Agreement, make available to Manager for inspection by its authorized representatives, during regular business hours, at the principal place of business of Hospital, any Hospital records determined by Manager to be necessary to perform its services and carry out its responsibilities hereunder or necessary for the defense of any legal or administrative claim or action relating to the Hospital, the Manager or the records.

4.7. <u>Hospital Services</u>.   Owner, through the expertise and knowledge of Manager, shall provide hospital services to patients in material compliance at all times with ethical standards, laws and regulations applicable to the provision of such services.  Owner shall also ensure through the expertise and knowledge of Manager that any Hospital employee required to be licensed by the State of Oklahoma has all required licenses, credentials, approvals, and other certifications to perform his or her duties and services for the Hospital.

4.8. <u>Material Changes</u>.   Owner shall notify Manager in writing within 10 days of occurrence of any of the following:

a.   Any action to revoke or nullify any of its licenses or permits, or its certification by Medicare or accreditation by the Joint Commission, or any successor thereof;

12

b.   Any changes in its ownership;

c.   Any action commenced against Hospital that could materially affect this Agreement; and

d.   Any other occurrence known to Owner, including any changes in any governmental law or regulation, which could materially impair the ability of Hospital to carry out its duties and obligations under this Agreement or that would impact or impair Manager's ability to provide services under this Agreement.

**5.   Management Fees and Expenses**.

5.1.   Management Fee.  Owner and Manager agree that the compensation set forth in this Section 5 is being paid to Manager in consideration of the substantial commitment made by Manager hereunder and that such fees are fair and reasonable and consistent with fair market value.  For the services rendered hereunder by Manager, Owner shall pay monthly to Manager as a management fee (the "Management Fee") an amount equal to:

a.   FOURTEEN THOUSAND TWO HUNDRED FIFTY ($14,250.00)   per month for months 1-12 following the Effective Date;

b.   FIFTEEN THOUSAND ($15,000.00) per month for months 13-24 following the Effective Date;

c.   FIFTEEN THOUSAND SEVEN HUNDRED FIFTY ($15,750.00) per month for months 25-36 following the Effective Date;

d.   SIXTEEN THOUSAND FIVE HUNDRED ($16,500.00) per month for months 37-48 following the Effective Date; and

e.   SEVENTEEN THOUSAND TWO HUNDRED FIFTY ($17,250.00) per month for months 49-60 following the Effective Date.

Such payments shall be due on the first and fifteenth  of each month**.** Upon the termination of this Agreement for any reason other than (i) Manager's material breach; (ii) the sale, lease, or other similar disposition of all or substantially all of the Hospital and/or its assets to a third partyl (iii) in the event the sales tax, to be brought to a vote of the citizens of Pauls Valley no later than six (6) months from the date of this agreement, fails to pass; or (iv) by mutual written agreement of the parties; all remaining payments of the then-current term of this agreement (*i.e.*, either the remaining payments due under the initial term or a subsequent renewal term, but not both) shall immediately become due and payable. Payments received more than ten days late are subject to a three percent (3%) one-time late payment fee and interest charged at eighteen percent (18%) per annum beginning on

13

the day the payment became overdue.  Owner agrees to pay Manager for its reasonable costs of collecting any amounts due under this Agreement, including attorney and collection agency fees.

5.2.   Travel Expenses.  In addition to the Management Fee specified in Section 5.1, Owner shall pay the travel expenses of Manager and all Key Employees.  Any payments required under this Section shall be due and payable under the same terms as specified in Section 5.1 above.

5.3.   Expense Payments.  For other goods, supplies, and expenses obtained hereunder by Manager for or on behalf of Owner, Manager shall forward the invoices to Owner, and Owner shall pay in full such reasonable expenses within fifteen (15) days of receipt unless other arrangements are mutually agreed to in writing between the parties.

5.4.   Nonpayment by Owner.  If any payment is not made by Owner when due, including without limitation those provided in Sections 5.2 and 5.3, Manager may, in addition to any other remedy available to it, immediately terminate this Agreement as provided in Section 9.1.

5.5.   Interim Officers.  In addition to the Management Fee specified in Section 5.1, Owner shall pay $16,500.00 per month plus travel and lodging expenses upon placement of an Interim CEO by Manager. Owner shall pay $11,500.00 per month plus travel and lodging expenses upon placement of an Interim CFO by Manager.  If Owner agrees to allow one interim executive to perform both CEO and CFO duties this fee will be reduced to $25,000 per month plus travel and lodging expenses.  Any payments required under this section shall be due and payable under the same terms as specified in Section 5.1 above.

6.   **Liability of Manager**.

6.1.   Standard of Care.  Manager agrees to provide, with respect to all services provided by Manager under or pursuant to this Agreement, a fair and reasonable standard of care, skill and diligence such as would normally be provided by an experienced manager with respect to work similar to the services to be provided under this Agreement.

6.2.   Other Persons.  Manager shall not be responsible for the acts or omissions of any of Owner's other contractors, or any subcontractor or any other persons performing any of the work on or in connection with Hospital or any consultants or other persons engaged by Owner with respect thereto, and Manager shall only be responsible for the performance of Manager's obligations hereunder in accordance with the terms of this Agreement.  In the event that Owner retains the services of any other contractors, subcontractors, consultants, or any other persons or entities performing any work on or in connection with

14

Hospital (regardless of whether such persons are introduced or referred to Hospital by Manager), Owner shall directly contract with such persons or entities and such relationships shall not be governed by the terms of this Agreement. Furthermore, in the event that Owner retains the services of any other contractors, subcontractors, consultants, or any other persons or entities performing any work on or in connection with Hospital, regardless of whether such persons or entities are affiliated with Manager in any way, Manager shall not be liable for any acts or omissions of such persons or entities. To the extent that any actions or enforcement are taken against Manager for such acts or omissions, Owner shall fully indemnify Manager for any costs or expenses related thereto.

6.3.  Limitation of Liability.  Manager shall not be in any way responsible or liable for any acts or omissions of Owner, Hospital, any management company, operator, consultant, contractor, subcontractor or any other person or entity performing any work on or in connection with Hospital occurring prior to, during or after the Effective Date (other than the acts of omissions of Manager itself). To the extent that any actions or enforcement are taken against Manager for such acts or omissions, Owner shall fully indemnify Manager for any costs or expenses related thereto. Owner agrees to maintain all prior insurance policies covering Hospital and any previous operators or managers in place and maintain "tail" coverage for the operations and management occurring prior to the Effective Date.

6.4.  No Obligation to Guaranty.  MANAGER SHALL NOT BE LIABLE TO ANY PERSON OR ORGANIZATION FOR ANY DEBT, LIABILITY OR OBLIGATION OF OWNER OR HOSPITAL INCURRED OR CREATED PURSUANT TO THE AUTHORITY GRANTED TO MANAGER IN THIS AGREEMENT OR BY REASON OF ITS MANAGEMENT, DIRECTION OR CONDUCT OF THE HOSPITAL UNLESS MANAGER, BY WRITTEN AGREEMENT, EXPRESSLY ASSUMES OR GUARANTEES ANY SUCH LIABILITY IN WRITING. MANAGER SHALL NOT BE REQUIRED, UNDER ANY CIRCUMSTANCES, TO GUARANTEE OR ASSUME ANY OBLIGATION OR LIABILITY OF OWNER OR HOSPITAL. OWNER SHALL BE DEEMED TO CONTROL ALL ASPECTS OF THE MANNER IN WHICH OWNER'S AND HOSPITAL'S BUSINESS IS CONDUCTED. MANAGER SHALL NOT BE LIABLE, BY VIRTUE OF THE PERFORMANCE OF ITS DUTIES HEREUNDER, FOR ANY BREACH OF ANY PAYOR OR OTHER AGREEMENT BETWEEN OWNER OR HOSPITAL AND ANY OTHER PARTY,

6.5.  Limitation on Damages.  IN NO EVENT WILL EITHER PARTY BE LIABLE, WHETHER IN CONTRACT, TORT, OR OTHERWISE, FOR ANY PUNITIVE, CONSEQUENTIAL, INCIDENTAL, SPECIAL, OR INDIRECT DAMAGES, AS A RESULT OF ANY BREACH OF THIS AGREEMENT, TO THE FULL EXTENT THESE MAY BE DISCLAIMED BY LAW UNLESS SUCH CLAIMS

15

ARISE FROM THE GROSS NEGLIGENCE OR INTENTIONAL ACTS OF EITHER PARTY.

6.6.   Disclaimer of Warranties.   Except as expressly set forth in this Agreement (i) Manager expressly disclaims all warranties, express or implied, except to the extent that any warranties implied by law cannot be validly disclaimed; (ii) Manager does not warrant that the services provided by Manager under this Agreement will produce any specific results for Owner or Hospital.   Owner acknowledges that it has relied on no warranties from Manager other than those expressly set forth in this Agreement.

6.7.   Consultants' Fees.   Without limiting anything herein, and subject to Owner's prior approval, Owner shall be solely responsible for payment of all fees and other compensation charged by consultants, underwriters, bond or other legal counsel, expert witnesses or other persons engaged by Owner (or by Manager on behalf of Owner) with respect to obtaining governmental approval involving the implementation, construction or financing of Hospital, and for payment of all application or filing fees or other charges for obtaining permits or licenses relating to Hospital as well as for any other consultants retained to provide services to Hospital.   Manager shall be responsible for reviewing such fees and Owner shall promptly provide Manager with copies of all bills, invoices and other information relating to such fees upon receipt.

7.   **Confidentiality of Information and Proprietary Information.**

7.1.   The parties agrees to keep confidential and not to use or to disclose to others either during the Term and for a period of two (2) years thereafter, except as expressly consented in writing by party owning the confidential information or as required by law, any secrets or confidential technology, proprietary information, customer list or trade secrets of the other party, or any matter or items ascertained by a party through their association with each other, the use or disclosure of which matter or item might reasonably be construed to be the contrary to the best interest of party owning the confidential information.   Except as otherwise provided herein, upon termination of this Agreement, neither party will take nor retain, without prior written authorization from the other party, any papers, patient or client lists, fee books, patient records, files or other documents or copies thereof or other confidential information of any kind belonging to a party and pertaining to such party's operations, business, sales, financial condition or products.   Without limiting other possible remedies for the breach of this covenant, the parties agree that injunctive or other equitable relief shall be available to enforce this covenant; but nothing herein shall be construed as the breaching party's consent to such relief.   Each party further agrees that if any restriction contained in

16

this Section is held by any court to be unenforceable or unreasonable, a lesser restriction may be enforced in its place and remaining restrictions contained herein shall be enforced independently of each other.  Information that is in public domain or which a party acquires from persons or entities not associated with the party owning the confidential information shall not be deemed to be confidential or proprietary, and its use by the other party shall NOT be restricted by this Agreement.

7.2.   Proprietary Property.   Each party agrees that the other party's proprietary property shall not be possessed, used or disclosed otherwise than may be necessary for the performance of this Agreement.   Each party acknowledges that its violation of this Agreement would cause the other party irreparable harm, and may (without limiting the other party's remedies for such breach) be enjoined at the instance of the other party.  Each party agrees that upon termination of this Agreement for any reason, absent the prior written consent of the other party, it shall have no right to and shall cease all use of the other party's proprietary property, and shall return all such proprietary property of the other party in its possession to the other party.   Owner acknowledges that Manager's proprietary information includes, but is not limited to, all books, manuals, documents, materials, business or technical information, trade secrets, systems, strategies, and all other information concerning Manager's business, and plans or policies related to the Manager or its clients that is not otherwise available to the public.  The parties acknowledge and agree that a breach of this Section 7.2 will result in irreparable harm to the non-breaching party and that the non-breaching party cannot reasonably or adequately be compensated in damages, and therefore, the non-breaching party shall be entitled to equitable remedies, including, but not limited to, injunctive relief, to prevent a breach and to secure enforcement thereof in addition to any other relief or award to which the non-breaching party may be entitled.

7.3.   Manager Business Records.   At all times during and after the Term of this Agreement, all business records and information relating to the business activities of Manager, including all books of account and general administrative records and all information generated under or contained in the management information system relating to the business activities of Manager, shall be and remain the sole property of Manager.

7.4.   Confidentiality of Agreement.  The terms of this Agreement and in particular the provisions regarding compensation, are confidential and shall not be disclosed except as necessary to the performance of this Agreement or as required by law.  In addition, except for disclosure to its bankers, underwriters, investors, or lenders, or as necessary or desirable for the conduct of business, including negotiations with other

17

acquisition candidates, neither party hereto shall disseminate or release to any third party any financial information regarding the other (past, present, or future) that was obtained by such party in the course of the negotiation of this Agreement or in the course of the performance of this Agreement, without the other party's written approval; provided, however, the foregoing shall not apply to information which (i) is generally available to the public other than as a result of a breach of confidentiality provisions; (ii) becomes available on a non-confidential basis from a source other than the other party or its affiliates or agents, which source was not itself bound by a confidentiality agreement; (iii) the disclosing party in good faith believes is required to be disclosed by law including securities laws, or pursuant to court order; or (iv) is financial information presented on a consolidated or combined basis.

7.5. <u>HIPAA</u>.   Manager and Owner agree to comply with the privacy, security, electronic transaction standards, and breach notification regulations implemented pursuant to the Health Insurance Portability and Accountability Act of 1996 as amended by the HITECH Act as well as applicable state and local privacy and security requirements.  To this end, the parties agree to execute and comply with the terms of the Business Associate Agreement attached hereto and incorporated herein by reference.

7.6. <u>Intellectual Property</u>.  Manager shall be the sole owner and holder of all right, title and interest, to all intellectual property furnished by it under this Agreement, including, but not limited to the trade name "NewLight Healthcare," and all substantially similar variations of the same (collectively, the "Trade Names"), all computer software, copyright, services mark and trademark right to any material or documents acquired, prepared, purchased or furnished by Manager pursuant to this Agreement.   Owner shall have no right, title or interest in or to such material and shall not, in any manner, distribute or use the same without the prior written authorization of Manager; provided, however, that the foregoing shall not restrict Hospital from distributing managed care information brochures and materials without the prior written approval of Manager provided no proprietary property of Manager is contained therein.

## 8.   **Term of Agreement.**

8.1. The term of this Agreement shall commence as of the Effective Date and shall be for an initial term of three years unless sooner terminated pursuant to Section 9 below ("Initial Term").

8.2. This Agreement shall automatically be renewed for additional successive three-year terms (each a "Renewal Term" and, together with the Initial Term, the "Term") unless terminated in accordance

18

with the terms hereof or unless a party provides written notice to the other party of their intent not to renew this Agreement at least 60 days prior to the end of the then current Term. Any schedule incorporated into this Agreement following the Effective Date shall have an Effective Date of the date set forth in such Schedule and the Date of Termination of such Schedule shall be the termination date of this Agreement unless otherwise specified in such Schedule.

9. **Termination.**

9.1. <u>Immediate Termination</u>.    At any time, this Agreement may be terminated immediately upon provision of written notice of termination under the following circumstances:

a. by either party, in the event the other party materially breaches any provision of this Agreement, other than Owner's failure to pay the Management Fee in a timely manner as required by Section 5, and such breach is not corrected within thirty (30) days following written notice thereof given by the non-breaching party;

b. by Manager, in the event Owner fails to pay the Management Fee in a timely manner as required by Section 5, and such failure is not corrected as set forth in this Section;

c. by Manager, if Hospital is excluded or suspended from participation in the Medicare and/or Medicaid program and such exclusion is not reversed or otherwise cured within thirty (30) days of the effective date of such exclusion or suspension;

d. mutual written agreement of the parties;

e. by either party in the event of the sale, lease, or other similar disposition of all or substantially all of the Hospital and/or its assets to a third party, or the condemnation or destruction of all or any material part of Hospital;

f. by Owner, in the event the sales tax, to be brought to a vote of the citizens of Pauls Valley no later than six (6) months from the date of this agreement, fails to pass;

g. by Manager, in the event that any act or omission on the part of Owner or Hospital results in the cancellation of Hospital's insurance coverage and new or substitute insurance coverage is not obtained effective as of the cancellation date of such prior coverage despite the reasonable efforts of Manager; or

h. by either party if Hospital ceases to operate or loses its license to operate.

19

9.2.   Legislative or Regulatory Change.  If there shall be a change in laws, regulations, or Medicare or Medicaid general instructions, the adoption of new legislation, or court order or other governmental order any of which materially affects the manner in which either party may perform or be compensated for its services under this Agreement, the parties shall immediately propose an amendment to this Agreement or basis for compensation.  If the parties are unable to agree upon a new services arrangement or basis of compensation within 30 days following notice of the change, either party may terminate this Agreement upon thirty (30) days advance written notice.

9.3.   Duties Upon Termination of Agreement.  The termination of this Agreement for any reason shall not affect any right, obligation or liability which has accrued under this Agreement on or before the effective date of such termination.  Upon termination of this Agreement as a whole for any reason, authority of Manager under this Agreement shall immediately cease.  All expense repayments owed to Manager and incurred up to the date of termination pursuant to the terms of the Agreement shall be paid within fifteen (15) days from the date of invoice.

9.4.   Agreements Surviving Termination.  The termination of this Agreement shall not terminate the right of Owner or Manager in its indemnification rights relating to events occurring during the Term of this Agreement.

10.   **Miscellaneous Provisions**.

10.1.   Proprietary Items.  The systems, methods, procedures and controls employed by Manager in the performance of this Agreement are proprietary in nature, shall be and remain the property of Manager, and shall not at any time during the Term or following termination of this Agreement be utilized, distributed, copied or otherwise employed by Owner except in the operation of Hospital during the Term of this Agreement.

10.2.   Additional Assurances.  The provisions of this Agreement shall be self-operative and shall not require further agreement by the parties except as may be herein specifically provided to the contrary; provided, however, at the request of either party, the party requested shall execute such additional instruments and take such additional acts as the requesting party may deem reasonably necessary to effectuate this Agreement.

10.3.   Non-Disparagement. Neither Owner nor Manager shall neither, directly or indirectly, engage in any conduct or make any statement disparaging or criticizing in any way each other or any of its affiliates, or any of their personnel nor, directly or indirectly, engage in any other conduct or make any other statement that could be reasonably expected to impair the goodwill of Manager or Owner or any of its

20

affiliates, or the reputation of Manager or Owner or any of its affiliates, in each case, except to the extent required by law, and then only after consultation with Manager or Owner as the case may be  to the extent possible.

10.4.  Consents, Approvals and Discretion.   Except as otherwise provided herein, whenever this Agreement requires any consent or approval to be given by either party or either party must or may exercise discretion, the parties agree that such consent or approval shall not be unreasonably withheld or delayed and such discretion shall be reasonably exercised.

10.5.  Indemnification.

a.  Owner shall indemnify, hold harmless, and defend Manager, its officers, directors, and employees, from and against any and all liability, loss, damage, claim, causes of action, and expenses (including reasonable attorneys' fees) to the extent not covered by insurance, caused or asserted to have been caused, directly or indirectly, by or as a result of (i) the performance of hospital services or any other acts or omissions by or under the supervision of Owner and/or its members, agents, employees, and/or subcontractors (other than Manager) during the Term, including any claim against Manager by a Owner or Hospital employee, which claim arises out of such Hospital employee's employment relationship with Hospital or as a result of services performed by such Hospital employee and which claim would typically be covered by workers' compensation; and (ii) arising directly or indirectly, in whole or in part, out of any matter related to the breach by Hospital or Owner of any provision of this Agreement or any gross negligence or acts or omissions by Hospital or Owner (including, but not limited to, any acts or omissions by or under the supervision of Owner, Hospital and/or their employees, directors, agents or contractors (other than Manager) during the Term hereof).

b.  Manager shall indemnify, hold harmless, and defend Owner, its officers, directors, and employees, from and against any and all liability, loss, damage, claim, causes of action, and expenses (including reasonable attorneys' fees), to the extent not covered by insurance, caused or asserted to have been caused, directly or indirectly, by or as a result of (i) the performance of any intentional acts, negligent acts, or omissions by Manager prior to termination of this Agreement, and (ii) arising directly or indirectly, in whole or in part, out of any matter related to the breach by Manager of any provision of this Agreement.

21

c.  If any claim or action of a third party ("Proceeding") shall be brought or asserted against an indemnified party or successor thereto (the "Indemnified Person") in respect to which indemnity may be sought under this Section 10.5 from an indemnifying person or any successor thereto (the "Indemnifying Person"), the Indemnified Person will give prompt written notice of such Proceeding to the Indemnifying Person who shall assume the defense thereof, including the employment of counsel reasonably satisfactory to the Indemnified Person and the payment of all expenses; provided, that any delay or failure to so notify the Indemnifying Person shall relieve the Indemnifying Person of its obligations hereunder only to the extent, if at all, that it is prejudiced by reason of such delay or failure. The Indemnified Person shall have the right to employ separate counsel in any Proceeding and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of the Indemnified Person unless the Indemnified Person shall in good faith determine that there exist actual or potential conflicts of interest that make representation by the same counsel inappropriate.  In the event that the Indemnifying Person, within ten (10) days after notice of any such Proceeding, fails to assume the defense thereof, the Indemnified Person shall have the right to undertake the defense, compromise, or settlement of such Proceeding for the account of the Indemnifying Person, subject to the right of the Indemnifying Person to assume the defense of such Proceeding with counsel reasonably satisfactory to the Indemnified Person at any time prior to the settlement, compromise, or final determination thereof.  The Indemnifying Person shall not, without the Indemnified Person's prior written consent, settle or compromise any Proceeding or consent to the entry of any judgment with respect to any Proceeding for anything other than money damages paid by the Indemnifying Person.

d.  Neither party shall have any liability whatsoever for damages suffered on account of the willful misconduct or negligent actions or inactions of any employee, agent or independent contractor of the other party; provided, however, that the foregoing shall not relieve either party from its obligations under this Agreement. Each party shall be solely responsible for compliance with all state and federal laws pertaining to employment taxes, income withholding, unemployment compensation contributions and other employment related statutes regarding their respective employees, agents and servants.

NEWLIGHT HEALTHCARE
1790948.4

e.     This Section 10.5 shall survive termination or expiration of this Agreement.

10.6.  <u>Limited Waiver of Sovereign Immunity</u>.  To the extent permitted by applicable laws, Owner voluntarily waives its right to assert sovereign immunity from suit or liability in response to an action by Manager seeking enforcement of this Agreement.  Owner does not otherwise waive immunities existing under applicable laws, and it is expressly understood that the waiver here granted is a limited and not a general waiver, and that its effect is limited to specific claims under this Agreement. Nothing in this provision or in this Agreement shall be construed as a waiver of Owner's immunity from tort liability except as provided by applicable Oklahoma law.

10.7.  <u>Legal Fees and Costs</u>.  In the event either party incurs legal expenses to enforce or interpret any provision of this Agreement, the prevailing party will be entitled to recover such legal expenses, including, without limitation, reasonable attorney's fees, costs and necessary disbursements, in addition to any other relief to which such party shall be entitled.

10.8.  <u>Choice of Law</u>.  The parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of Oklahoma.

10.9.  <u>Benefit/Assignment</u>.  Except as otherwise provided herein, this Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective legal representatives, successors and assigns; provided, however, that neither party may assign this Agreement or any or all of its rights or obligations hereunder (except by operation of law) without the prior written consent, which consent may be unreasonably withheld or delayed.

10.10. <u>No Brokerage</u>. The parties represent to each other that no broker has in any way been contracted in connection with the transactions contemplated hereby.

10.11. <u>Cost of Transaction</u>.   Upon completion of the transactions contemplated, the parties agree as follows:  (i) Owner will pay the fees, expenses and disbursements of Hospital and its agents, representatives, accountants and counsel incurred in connection with the subject matter hereof and any amendments hereto; and (ii) Manager will pay the fees, expenses and disbursements of its agents, representatives, accountants and counsel incurred in connection with the subject matter hereof and any amendments hereto.

10.12. <u>Waiver of Breach</u>. The waiver by either party of breach or violation of any provision of this Agreement shall not operate as, or be construed

23

to be, a waiver of any subsequent breach of the same or other provision hereof.

10.13. <u>Notices</u>.  Any written notices, demands or communications required, permitted or desired to be given hereunder shall be deemed effectively given when personally delivered or mailed by prepaid certified mail, return receipt requested, addressed as follows:

To Owner:     Pauls Valley Hospital Authority
              Attn: Secretary of Pauls Valley Hospital Authority
              PO Box 778
              100 W. Paul Avenue
              Pauls Valley, OK 73075; and

              James W. Carlton, Jr., Authority Counsel
              PO Box 10
              Pauls Valley, OK 73075

To Manager:   NewLight Healthcare, LLC
              Attention: Todd Biederman
              3267 Bee Caves Rd., Suite 107-511
              Austin, Texas 78746

Or to such other address, and to the attention of such other person or officer as any party may designate, with copies thereof to the respective counsel thereof as notified by such party.

10.14. <u>Severability</u>.  In the event any provision of this Agreement is held to be invalid, illegal or unenforceable for any reason and in any respect, such invalidity, illegality or unenforceability shall in no event affect, prejudice or disturb the validity of the remainder of this Agreement, which shall be in full force and effect, enforceable in accordance with its terms.

10.15. <u>Divisions and Headings</u>.  The divisions of this Agreement into sections and subsections and the use of captions and headings in connection therewith are solely convenience and shall have no legal effect whatsoever in construing the provisions of this Agreement.

10.16. <u>Entire Agreement</u>.  This Agreement contains the entire agreement between the parties and shall not be modified or amended in any manner except by an instrument in writing executed by the parties hereto.

10.17. <u>Authorization for Agreement</u>.  The execution and performance of this Agreement by Contractor and Hospital have been duly authorized by all necessary laws, resolutions and corporate or partnership action and

24

this Agreement shall constitute the valid and enforceable obligations of the Contractor and Hospital in accordance with its terms.

10.18. <u>Licenses, Permits and Certificates</u>.   Manager and Owner shall each obtain and maintain in effect, during the Term, all licenses, permits and certificates required by law which are applicable to their respective performance pursuant to this Agreement.

10.19. <u>No Responsibility for Hospital's Fraudulent Acts</u>.   Manager shall not be liable for any direct, indirect or consequential damages, losses, taxes, interest or penalties arising from its discovery or failure to discover any errors, irregularities or illegal acts of Owner, Hospital or its employees, independent contractors, fiduciaries, agents or representatives, including, but not limited to, acts of fraud, embezzlement or defalcations.

10.20. <u>Government Receivables</u>.   The parties intend to fully comply with the laws and regulations of the United States under (i) 42 U.S.C. 1395u(b)(6) in connection with Medicare, (ii) 42 U.S.C. 1396a(a)(32) in connection with Medicaid, (iii) 32 C.F.R. 199.1 *et seq.* in connection with TRICARE and (iv) all other provisions affecting government receivables.   Accordingly, notwithstanding any provision to the contrary herein, in no event shall any term or condition of this Agreement require any action or other conduct which violates any such laws and regulations.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed in multiple originals by their duly authorized officers, all as of the day and year first above written.

**OWNER:**
Pauls Valley Hospital Authority

By: _____

Name:  Gary Alfred

Title:  Authority Chairman

Date of Execution:  _11-18-13_

**MANAGER:**
NEWLIGHT HEALTHCARE, LLC

25

By: _Todd F. Biederman_

Name:  Todd Biederman

Title:  President and Chief Executive Officer

Date of Execution:  _11-19-2013_

26