# SECURITY AGREEMENT

THIS SECURITY AGREEMENT (this "Security Agreement") is made as of October 3, 2016, by PAULS VALLEY HOSPITAL AUTHORITY, an Oklahoma public trust ("Debtor"), in favor of NEWLIGHT HEALTHCARE, LLC, a Texas limited liability company, and LTC GROUP, LLC, a Texas limited liability company (collectively with their successors and assigns, are collectively referred to herein as "Secured Parties").   PAULS VALLEY NATIONAL BANK ("Lender") enters into this Agreement for the purposes described herein.

A.      Pursuant to that certain Loan Agreement (the "Loan Agreement") dated April 1 , 2015, Pauls Valley National Bank ("Lender") made a loan to Debtor (the "Loan") which is evidenced by that certain Sales Tax Revenue Note, Taxable Series 2015 dated April 1, 2015 in the original principal amount of $2,041,000.00 (the "Note").

B.      Lender cannot loan additional funds to Debtor without additional collateral for the Loan and any other debts owed by Debtor to Lender.

C.      As an inducement to Lender to lend additional funds to Debtor, the Secured Parties entered into those certain Pledge Agreements (the "Pledge Agreements") dated of even date herewith with Lender wherein Secured Parties pledged certificates of deposit to Lender as additional collateral for the Loan.

D.      As consideration for entering into the Pledge Agreements, Secured Parties are requiring that Debtor enter into this Agreement with Borrower to grant Secured Parties a security interest in Debtor's accounts revenue as described herein and indemnify Secured Parties for any liability they might incur under the Pledge Agreements.

NOW, THEREFORE, as consideration for the Lenders making the Modifications, and in consideration of the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, Debtor and the Secured Parties hereby agrees as follows:

1.      Definitions.  For the purposes of this Security Agreement, the following terms shall have the following meanings:

"Bank Liabilities" means and includes any and all indebtedness, obligations and liabilities of any kind arising in any way of Debtor to the Lender, now existing or hereafter created, under the Note, the other Credit Documents, or otherwise, including any amortization, future advances, whether obligatory or voluntary, under, or refinancings, renewals or extensions of or substitutions for, any existing or future debt and all liabilities and obligations of Debtor hereunder; as well as all costs, expenses, advances and liabilities that may be made or incurred by Lender in any way in connection with any of the Bank Liabilities or any collateral security therefor.

"Books and Records" means all of Debtor's books and records, including, but not limited to, records indicating, summarizing, or evidencing the Collateral, the Bank Liabilities, the NewLight Liabilities, and Debtor's property, business operations, or financial condition, computer runs, invoices, disks, cd-roms, tapes, processing software, processing contracts (such as contracts for computer time and services) and any computer prepared information, disks, cd-roms, tapes, or data of every kind and description, whether in the possession of Debtor or in the possession of third parties.

"Collateral" means all of the following described property owned by Debtor, whether now owned or hereafter acquired:

(a)     ACCOUNTS, which means any "account," as such term is presently or hereafter defined in Article 9 of the UCC, now owned or hereafter acquired by Debtor, and in any event shall include, without limitation, each of the following, whether now owned or hereafter acquired by Debtor: accounts, accounts receivable, contract rights, bills, acceptances, and other forms of obligations arising out of the sale, lease or consignment of goods or the rendition of services by Debtor; together with any property evidencing or relating to the Accounts (such as guaranties, credit insurance), any security for the Accounts, and all Books and Records relating thereto; and

(b)     PROCEEDS, which means any "proceeds," as such term is presently or hereafter defined in Article 9 of the UCC, now owned or hereafter acquired by Debtor, and in any event shall include, without limitation: any and all Proceeds of any of the foregoing, including, without limitation, whatever is received upon the use, lease, sale, exchange, collection, any other utilization or any disposition of any of the Collateral described in this Section 1, whether cash or non-cash, all rental or lease payments, accounts, chattel paper, instruments, documents, contract rights, general intangibles, equipment, inventory, substitutions, additions, accessions, replacements, products, and renewals of, for, or to such property and all insurance therefor.

"Credit Documents" means collectively, all credit accommodations, notes, investment agreements, loan agreements, guarantees, security agreements, mortgages, instruments, pledge agreements, assignments, acceptance agreements, commitments, facilities, reimbursement agreements and any other agreements, documents and instruments, now or hereafter existing, creating, evidencing, guarantying, securing or relating to any or all of the Bank Liabilities, together with all amendments, modifications, renewals, or extensions thereof, including, without limitation, the Note.

"Event of Default" means (i) any Event of Default as defined in the Note, the Loan Agreement, or any other Credit Document, (ii) failure of Debtor to pay any sum due pursuant to any of the Bank Liabilities or the NewLight Liabilities as and when due, whether by stated maturity, demand, acceleration or otherwise, (iii) the foreclosure or conveyance in lieu of foreclosure of all or any portion of the collateral provided in the Pledge Agreements; or (iv) any breach or violation of any representation, warranty, covenant or term of this Agreement, the Management Agreement, or any other agreement between Debtor and one or both of the Secured Parties.

"Management Agreement" means that certain Management Services Agreement dated November 12, 2013 by and between Debtor and NewLight Healthcare, LLC.

"NewLight Liabilities" means and includes any and all indebtedness, obligations. and liabilities of any kind arising in any way of Debtor to either or both of the Secured Parties, now existing or hereafter created, under the Management Agreement, this Agreement, or otherwise, including any amortization, future advances, whether obligatory or voluntary, under, or refinancings, renewals or extensions of or substitutions for, any existing or future debt and all liabilities and obligations of Debtor hereunder; as well as all costs, expenses, advances and liabilities that may be made or incurred by the Secured Parties in any way in connection with any of the NewLight Liabilities or any collateral security therefor.

"UCC" means the Uniform Commercial Code as in effect from time to time in the State of Texas and any other applicable state.

2.     Security Interest.  As security for the due and punctual complete payment and full and complete performance of each of the NewLight Liabilities, Debtor hereby grants to the Secured Parties a

security interest in and general lien upon all of Debtor's right, title and interest in and to all the Collateral and any part thereof.

3.      <u>Indemnity of Secured Parties</u>.  Debtor shall indemnify and hold harmless Secured Parties (for purposes of this subsection, the term "Secured Parties" shall include the managers, officers, employees, members, and agents of Secured Parties and any persons or entities owned or controlled by, owning or controlling, or under common control or affiliated with Secured Parties) from and against, and reimburse them for, all claims, demands, liabilities, losses, damages, causes of action, judgments, penalties, costs and expenses (including, without limitation, reasonable attorney fees) which may be imposed upon, asserted against or incurred or paid by them by reason of, on account of or in connection with the Pledge Agreements, the Management Agreement, or on account of any transaction arising out of or in any way connected with the Collateral or with this Agreement. **WITHOUT LIMITATION, IT IS THE INTENTION OF DEBTOR AND DEBTOR AGREES THAT THE FOREGOING INDEMNITIES SHALL APPLY TO EACH INDEMNIFIED PARTY WITH RESPECT TO CLAIMS, DEMANDS, LIABILITIES, LOSSES, DAMAGES, CAUSES OF ACTION, JUDGMENTS, PENALTIES, COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEY FEES) WHICH IN WHOLE OR IN PART ARE CAUSED BY OR ARISE OUT OF THE NEGLIGENCE OF SUCH (AND/OR ANY OTHER) INDEMNIFIED PARTY OR ANY STRICT LIABILITY. HOWEVER, SUCH INDEMNITIES SHALL NOT APPLY TO ANY INDEMNIFIED PARTY TO THE EXTENT THE SUBJECT OF THE INDEMNIFICATION IS CAUSED BY OR ARISES OUT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH INDEMNIFIED PARTY.** The foregoing indemnities shall survive the termination of this Agreement, any foreclosure of the collateral provided in the Pledge Agreements or conveyance in lieu of foreclosure and the repayment of the Loan and the discharge, and release of the Credit Documents.

4.      <u>Representations and Warranties</u>.  Debtor represents and warrants to the Secured Parties, which representations and warranties shall be continuing representations and warranties until all of the NewLight Liabilities are satisfied in full, as follows:

4.1      <u>Locations</u>. Debtor shall not change its chief place of business, chief executive offices and the office(s) where Debtor's records are kept concerning accounts, contract rights without providing Secured Parties thirty (30) days' prior written notice.

4.2      <u>Trade Names</u>.  It conducts business under and through its legal name as set forth on the signature page hereto.

4.3      <u>Formation and Authority</u>.  Debtor is duly organized and validly existing and in good standing under the laws of the State of Oklahoma and is qualified and licensed to do business in those jurisdictions where the conduct of its business or ownership of its properties requires such qualification or license.  Debtor has the power and authority to own the Collateral, to enter into and perform this Security Agreement and any other documents or instruments executed in connection herewith, and to incur the NewLight Liabilities.

4.4      <u>Duly Authorized; Not in Violation of Law</u>. This Security Agreement and any other documents or instruments executed in connection herewith have been duly authorized, executed, and delivered, and constitute the legal, valid, and binding obligations of Debtor, enforceable against Debtor in accordance with their respective terms, except as enforcement may be limited by public policy, applicable bankruptcy, insolvency, reorganization, fraudulent conveyance or transfer, moratorium or similar laws affecting, the enforcement of creditors' rights generally and by general principles of equity relating to enforceability (regardless of whether considered in a proceeding at law or in equity). This

Security Agreement and any other documents and instruments executed in connection herewith do not and will not violate any law, the charter, the bylaws or organizational documents of Debtor, or any other agreement or instrument to which Debtor or any of its property may be bound or subject.

        4.5        <u>No Consents Necessary</u>.

        (a)        No consent or approval of any person or entity, including, without limitation, any debt or equity holder of Debtor, any equipment lender or of any public authority, is necessary for the valid execution, delivery and performance of this Security Agreement by Debtor, or any document or instrument executed in connection herewith.

        (b)        The filing of UCC financing statements naming Debtor as "debtor" and the Secured Parties as "secured party" in the appropriate filing offices, and the requisite filing requirements to perfect security interests in bank accounts and motor vehicles, no authorization, consent, approval or other action by, and no notice to or filing or recording with, any governmental, administrative or judicial authority or regulatory body is currently or is reasonably expected to be required either (i) for the grant by Debtor of the liens and security interests granted hereby or for the execution, delivery or performance of this Security Agreement by Debtor, or (ii) for the perfection of or the exercise by the Secured Parties of its rights and remedies hereunder.

        4.6        <u>Rights in Collateral</u>.

        (a)        Debtor is the sole owner of each item of Collateral in which it is granting a security interest hereunder, having good and marketable title thereto free and clear of any and all Liens.

        (b)        No effective security agreement, financing statement, equivalent security or Lien, instrument or continuation statement covering all or any part of the Collateral is on file or of record in any public office, except such as has been filed in favor of the Secured Parties pursuant to this Security Agreement.

        4.7        <u>Regarding Accounts</u>.  Each Account represents a bona fide account arising in the ordinary course of Debtor's business completed in accordance with the terms and provisions contained in the documents available to the Secured Parties with respect thereto and may or may not be evidenced by a document.  There are no material setoffs, claims or disputes existing or, to the best of Debtor's knowledge, asserted with respect to any Account, and Debtor has not made any agreement with any Account debtor with any deduction therefrom except a discount or allowance allowed by Debtor in the ordinary course of its business for prompt payment.  To the best of Debtor's knowledge, there are no facts, events or occurrences that in any way impair the validity or enforcement of any Account or will likely reduce the amount payable thereunder as shown on the respective aged receivable trial balances, Debtor's books and records and all invoices and statements delivered to the Secured Parties with respect thereto.  Debtor has received no notice of proceedings or actions that are threatened or pending against any Account debtor that will likely result in any material adverse change in such Account debtor's financial condition.  Debtor has no knowledge that any Account debtor is unable generally to pay its debts as  they become due.

        5.        <u>Further Assurances; Filing</u>.

        5.1        <u>Delivery of Documents; Inspection of Collateral</u>.  At any time and from time to time, upon the demand of the Secured Parties, Debtor will, at Debtor's expense: (a) immediately deliver and pledge to the Secured Parties, properly endorsed to the Secured Parties and/or accompanied by such instruments of assignment and transfer in such form and substance as the Secured Parties may request,

any and all documents as the Secured Parties may specify in their demand; (b) give, execute, deliver, file, and/or record any notice, statement, instrument, assignment, document, agreement, or other papers that may be necessary or desirable, or that the Secured Parties may request, in order to create, preserve, perfect, or validate any security interest granted pursuant hereto or intended to be granted hereunder or to enable the Secured Parties to exercise or enforce their rights hereunder or with respect to such security interest; (c) keep, stamp, or otherwise mark any and all documents and its Books and Records relating to the Collateral in such manner as the Secured Parties may reasonably require; and/or (d) permit representatives and agents of the Secured Parties access to its premises at any time reasonably requested by the Secured Parties to inspect the Collateral and the Books and Records and to audit and make abstracts from the Books and Records.

5.2     Filing of Financing Statement.  At the sole option of the Secured Parties, and without Debtor's consent, the Secured Parties may file a carbon, photographic or other reproduction of this Security Agreement or any financing statement executed pursuant hereto as a financing statement in any jurisdiction so permitting.

5.3     Secured Parties' Collateral Custody Duties.  With respect to the Collateral, or any part thereof, which at any time may come into the possession, custody or under the control of the Secured Parties or any of its agents, associates or correspondents, Debtor hereby acknowledges and agrees that the sole duty of the Secured Parties with respect to the custody, safekeeping and physical preservation of such Collateral, whether pursuant to Section 9-207 of the UCC or otherwise, shall be to deal with it in the same manner as the Secured Party deals with similar property for its own account.  Neither the Secured Parties, nor any of their respective partners, members, managers, directors, officers, employees, affiliates, agents, associates or correspondents shall be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so.

6.     Covenants.  Debtor hereby covenants and agrees that for as long as any NewLight Liabilities are outstanding:

6.1     Defense of Collateral.  Debtor shall defend the Collateral against all claims and demands of all persons or entities at any time claiming the same or any interest therein other than the Secured Parties.

6.2     Notice of Changes in State of Formation, Form of Entity, Location of Chief Executive Office, Residence, Books and Records, Collateral.  Debtor shall provide the Secured Parties with prompt prior written notice of: (a) any intended change in the form of entity of Debtor, and/or the state of formation; (b) any intended change in the chief executive office or residence of Debtor, and/or the office where Debtor maintains its Books and Records; and (c) the location or movement of any Collateral to or at an address other than Debtor's address as set forth on the signature page hereof.

6.3     Prompt Payment of Taxes; Delivery to the Secured Parties of Proof of Payment.  Debtor shall promptly pay any and all taxes, assessments, and/or governmental charges upon the Collateral on the dates such taxes, assessments, and/or governmental charges are due and payable, except to the extent that such taxes, assessments, and/or charges are contested in good faith by Debtor by appropriate proceedings and for which Debtor is maintaining adequate reserves.

6.4     Notice of Adverse Changes, Events of Default, Seizures and Institution of Litigation.  Debtor shall immediately notify the Secured Parties of: (a) the occurrence of any event or circumstance that is reasonably likely to result in a material adverse effect on Debtor's business, property, or financial condition, including, without limitation, any loss of or damage to any Collateral; (b) the occurrence of an Event of Default; (c) any seizure of the Collateral; (d) any claims or alleged claims of

third parties to the Collateral that, either singly or in the aggregate, is reasonably likely to have a material adverse effect on Debtor or the Collateral; and (e) upon obtaining knowledge thereof, the institution of any litigation, arbitration, governmental investigation or administrative proceedings against or affecting Debtor or any of the Collateral that, if adversely determined, is reasonably likely, either singly or in the aggregate, to result in an Event of Default or to have a material adverse effect on Debtor, its business, property, or financial condition.

6.5     Maintenance of Books and Records.   Debtor shall maintain complete and accurate Books and Records in accordance with generally accepted accounting principles in effect in the United States from time to time, and shall make all necessary entries therein to reflect the costs, values and locations of its Inventory and Equipment and the transactions giving rise to its Accounts and all payments, credits and adjustments thereto.

6.6     Additional Insurance.   Except with respect to any of Debtor's securities issued to the Secured Parties in connection with the Note, Debtor shall not issue any debt, equity or derivative securities after the date hereof, without the consent of the Secured Parties, such consent not to be unreasonably withheld.

6.7     Secured Parties as Attorney-in-Fact.   Debtor hereby irrevocably appoints Secured Parties (and any of their attorneys, officers, employees, or agents) as its true and lawful attorney-in-fact, said appointment being coupled with an interest, with full power of substitution, in the name of Debtor, or otherwise, for the sole use and benefit of Secured Parties in their sole discretion, but at Debtor's expense, to exercise, to the extent permitted by law, in Secured Parties' names or in the name of Debtor or otherwise, the powers set forth herein, whether or not any of the NewLight Liabilities are due, such powers, including but not limited to the powers at any time following demand for payment under the Note, or the occurrence of an Event of Default: (a) to demand, collect, receive payment of, settle, compromise or adjust all or any of the Collateral; (b) to sign and file one or more financing statements naming Debtor as debtor and Secured Parties, collectively, as secured party and indicating therein the types or describing the items of Collateral herein specified; and (c) to execute any notice, statement, instrument, agreement, or other paper that the Lenders may require to create, preserve, perfect, or validate any security interest granted pursuant hereto or to enable Secured Parties to exercise or enforce its rights hereunder or with respect to such security interest.

6.8     Liability of Attorney-in-Fact.   Neither Secured Parties nor their attorneys, officers, employees, or agents shall be liable for acts, omissions, any error in judgment or mistake in fact in its/their capacity as attorney-in-fact other than as a result of Secured Parties' gross negligence or willful misconduct.   Debtor hereby ratifies all acts of Secured Parties as its attorney-in-fact other than as a result of the gross negligence or willful misconduct of Secured Parties.   This power, being coupled with an interest, is irrevocable until the NewLight Liabilities have been fully satisfied.   Secured Parties shall not be required to take any steps necessary to preserve any rights against prior parties with respect to any of the Collateral.

6.9     Effect of Extensions and Modifications.   Secured Parties may extend the time of payment, arrange for payment in installments or otherwise modify the terms of, or release, any of the Collateral, without thereby incurring responsibility to, or discharging or otherwise affecting any liability of, Debtor.

7.     Remedies.

7.1     Acceleration of Obligations; General Rights of the Secured Parties.   Upon the occurrence of an Event of Default, at the Secured Parties' sole option, all obligations, including duties and

payments, owed to Secured Parties pursuant to this Agreement, the Management Agreement, or any other agreement between Debtor and either Secured Party (collectively, the "Obligations"), shall immediately become due and payable in full, all without protest, presentment, demand or further notice of any kind to Debtor, all of which are expressly waived. Upon and following an Event of Default, the Secured Parties may, at their option, exercise any and all rights and remedies they have under this Security Agreement, the Management Agreement, any other agreement between Debtor and either Secured Party and/or applicable law, including, without limitation, the right to charge and collect interest on the principal portion of the Obligations at a rate equal to ten percent (10%) per annum, upon and after an Event of Default, maturity (whether by acceleration or otherwise) and entry of a judgment in favor of the Secured Parties with respect to any or all of the Obligations.

7.2 _Additional Rights and Remedies_. In addition to the rights and remedies available to the Secured Parties as set forth above and any other rights or remedies available to the Secured Parties under applicable law, upon the occurrence of an Event of Default hereunder, or at any time thereafter, the Secured Parties may at their option, immediately and without notice, do any or all of the following, which rights and remedies are cumulative, may be exercised from time to time, and are in addition to any rights and remedies available to the Secured Parties under any other agreement or instrument by and between Debtor and the Secured Parties, as applicable:

(a) Exercise any and all of the rights and remedies of a secured party under the UCC, including, without limitation, the right to require Debtor to assemble the Collateral and make it available to the Secured Parties at a place reasonably convenient to the parties;

(b) Notify the account debtors for any of the Accounts to make payment directly to the Secured Parties, or to such post office box as the Secured Parties may direct;

(c) Demand, sue for, collect or retrieve any money or property at any time payable, receivable on account of or in exchange for, or make any compromise, or settlement deemed desirable with respect to any of the Collateral; and

(d) Upon twenty (20) days' prior written notice to Debtor (or one (1) day's notice by telephone with respect to Collateral that is perishable or threatens to decline rapidly in value), which Debtor hereby acknowledges to be sufficient, commercially reasonable and proper, the Secured Parties may sell any or all of the Collateral at any time and from time to time at public or private sale (using good faith efforts in such private sale), with or without advertisement thereof, and apply the proceeds of any such sale first to the Secure Parties' expenses in preparing the Collateral for sale (including reasonable attorneys' fees) and second to the complete satisfaction of the NewLight Liabilities in any order deemed appropriate by the Secured Parties in their sole discretion. Debtor waives the benefit of any marshaling doctrine with respect to the Secured Parties' exercise of its rights hereunder. The Secured Parties or anyone else may be the purchaser of any or all of the Collateral so sold and thereafter hold such Collateral absolutely, free from any claim or right of whatsoever kind, including any equity of redemption of Debtor any such notice, right and/or equity of redemption being hereby expressly waived and released.

8. _Miscellaneous_.

8.1 _Remedies Cumulative; No Waiver_. The rights, powers and remedies of the Secured Parties provided in this Security Agreement and the Management Agreement are cumulative and not exclusive of any right, power or remedy provided by law or equity. No failure or delay on the part of the Secured or any of them in the exercise of any right, power or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or remedy preclude any other or further exercise thereof, or the exercise of any other right, power or remedy.

8.2    Notices. All notices and other communications hereunder shall be in writing and shall be deemed to have been properly delivered and received by email where confirmation or receipt by the receiving party's receiver can be documented, by facsimile where confirmation of good transmission or receipt by the receiving party's receiver is documented, upon receipt when personally delivered by hand or by reputable overnight courier, or three (3) business days  after being mailed by first class certified or registered mail, postage prepaid, as follows:

(a)    If to the Debtor:

_____
_____
_____

(b)    If to the Secured Parties:

*New Light Healthcare, LLC  Attn: Todd Biederman*
*3267 Bee Caves Rd., Ste 107-517*
*Austin, TX  78746*

or to such other address or addresses as the party to whom such notice is directed may have designated in writing to the other party hereto.  A notice shall be deemed to have been given upon receipt by the party to whom such notice is directed, or if receipt is refused, on the day on which delivery was attempted.

8.3    Costs and Expenses.  Debtor shall promptly pay (or reimburse, as the Secured Parties may elect) all costs and expenses that the Secured Parties may hereafter incur in connection with the perfection and enforcement of this Agreement, the Management Agreement, the collection of all amounts due under this Agreement or the Management Agreement, and all amendments, modifications, consents or waivers, if any, to this Agreement or the Management Agreement.

8.4    Governing Law.  This Agreement has been entered into and shall be construed and enforced in accordance with the internal substantive laws of the State of Texas without reference to the choice of law principles thereof, except as provided in the UCC as adopted in such state as to matters of perfection and priority of security interests.

8.5    Integration.  This Security Agreement and the Management Agreement constitute the sole agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.

8.6    Amendment; Waiver.  No amendment of this Security Agreement, and no waiver of any one or more of the provisions hereof shall be effective unless set forth in writing and signed by the parties hereto.

8.7    Successors and Assigns.  This Security Agreement shall be binding upon Debtor and the Secured Parties and, where applicable, their respective heirs, executors, administrators, successors and permitted assigns.

8.8    Assignment. Debtor may not assign its rights hereunder or any interest herein without the prior written consent of the Secured Parties, which consent may be withheld in their sole discretion, and any such assignment or attempted assignment by Debtor shall be void and of no effect with respect to the Secured Parties.

8.9     <u>Severability</u>.  The illegality or unenforceability of any provision of this Security Agreement or any instrument or agreement required hereunder shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Security Agreement or any instrument or agreement required hereunder. In lieu of any illegal or unenforceable provision in this Security Agreement, there shall be added automatically as a part of this Security Agreement a legal and enforceable provision as similar in terms to such illegal or unenforceable provision as may be possible.

8.10    <u>Headings</u>.  The headings of sections and sections have been included herein for convenience only and shall not be considered in interpreting this Security Agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK;
SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the parties hereto have executed this Security Agreement on this date above first written.

ATTEST:

BY: _____

**DEBTOR:**

**PAULS VALLEY HOSPITAL AUTHORITY,**
an Oklahoma public trust

By: _____
Name: _____NATHAN STACLS_____
Title: _____CEO_____

**SECURED PARTIES:**

**NEWLIGHT HEALTHCARE, LLC,**
a Texas limited liability company

By: _____
Name: _____Todd F. Biederman_____
Title: ___President and CEO___

**LTC GROUP, LLC,**
a Texas limited liability company

By: _____
Name: _____Todd F. Biederman_____
Title: _____President_____

## ACKNOWLEDGEMENT AND CONSENT

The undersigned, Pauls Valley National Bank, hereby acknowledges and consents for all purposes to Debtor entering into this Agreement, including Debtor granting the security interest in certain of its assets as described herein.

**LENDER:**

**PAULS VALLEY NATIONAL BANK**

By: _____

Name: _____

Title: _____