IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAULS VALLEY HOSPITAL AUTHORITY d/b/a PAULS VALLEY GENERAL HOSPITAL,<br><br>    Plaintiff,<br><br>v.<br><br>NEWLIGHT HEALTHCARE, LLC, A Texas limited liability company; LTC GROUP, LLC, A Texas limited liability company; and FIRST UNITED BANK AND TRUST CO., an Oklahoma Domestic Bank,<br><br>    Defendants. | Case No. CIV-18-00826-HE |

# PLAINTIFF'S MOTION FOR
# EXTENSION OF TEMPORARY RESTRAINING ORDER
# AND SUPPORTING BRIEF

As noted in this Court's Order (Doc. 11), the Temporary Restraining Order ("TRO," Doc. 1-2)entered by the Garvin County District Court will expire on September 10, 2018, unless extended by this Court. The TRO was entered based on the verified Petition (Doc. 1-1), which alleges as follows:

### Count 1

1. Defendant NewLight Healthcare, LLC, and Defendant LTC Group, LLC (collectively, the "Defendant Managers"), were, until approximately July 3, 2018, the manager of the Pauls Valley General Hospital ("PVGH" or the "Hospital"), the hospital operation owned by Plaintiff pursuant to a Management Services Agreement dated November 12, 2013 (**Exhibit A**).

2. On October 3, 2016, Plaintiff and Defendant Managers entered into a Security Agreement (the "Security Agreement") (**Exhibit B**).

3. The Security Agreement was amended on December 1, 2016 (**Exhibit C**).

4. The Security Agreement, as amended, was entered into in conjunction with Plaintiff's delivery to Defendant a Promissory Note dated December 1, 2016

(**Exhibit D**), and an amendment to an existing Management Services Agreement (**Exhibit E**). The documents named in this paragraph are, collectively, the "Contracts."

5. While acting as manager for the Hospital, Defendant Managers were in control of (a) receipts of the Hospital's funds, (b) paying the Hospital's creditors, including the Defendant Managers, and (c) the Hospital's entire accounting and billing systems.

6. On June 26, 2018, Defendant Managers gave to Plaintiff notice of purported defaults by Plaintiff in the Contracts and made demand (**Exhibit F**) for delivery of the Hospital's Accounts Receivable (the "Hospital Assets") to Defendant Managers.

7. In addition, on July 31, 2018, Defendant Managers have given to Plaintiff notice (**Exhibit G**) (the "Notice") that they intend to sell the Hospital Assets.

8. The Notice advised that Plaintiff was entitled to an accounting. The Notice directed Plaintiff to call Defendant Managers' counsel to request such an accounting.

9. Pursuant to the Notice, on August 3, 2018, counsel for Plaintiff called Defendant Managers' counsel, Marc Taubenfeld, and was connected with his voice mail. A message was left for a return call and that Plaintiff wished to be provided an accounting.

10. In addition to compliance with the Notice, also on August 3, 2018, counsel for Plaintiff sent to counsel for Defendant Managers a letter (**Exhibit H**) demanding an accounting.

11. No accounting has been provided to Plaintiff.

12. Plaintiff is currently unable to ascertain whether the Defendant Managers have been overpaid for their services, but it appears Plaintiff has paid the Defendant Managers over $1,600,000.

13. Material disputes exist between the parties as to the amounts which Plaintiff may owe Defendant Managers after proper application of all payments made by Plaintiff to Defendant Managers pursuant to the Contracts and offsets for the damages described in Count 2.

14. In addition to the material disputes between the parties as to the amount which one party owes to another, Plaintiff has numerous claims against Defendant Managers related to Defendant Managers' neglect and mismanagement of the Hospital and other acts and/or omissions of Defendant Managers which have damaged Plaintiff's financial condition. Defendant Managers have utterly failed in their performance under the Management Services Agreement (**Exhibit A**) to the point of the Hospital's near financial failure and now seek to strip the Hospital of its near-cash assets on their way out the door.

15. On August 9, 2018, Defendant Managers gave Plaintiff their "Final Notice" (**Exhibit**

**I**) that they intend to proceed to seize the Hospital Assets in satisfaction of amounts purportedly owing to Defendant Managers.

16. On August 10, 2018, Defendant Managers sent Plaintiff their "Demand for Financial Information and Records Access" (**Exhibit J**).

17. Also on August 10, 2018, Defendant Managers mailed 105 letters to most of Plaintiff's payors for services *falsely* advising them that Defendant Managers had a "first priority security interest in all of PVHA's accounts . . . ." Without admitting any valid interest of Defendant Managers, on the face of the "Transaction Documents" as defined in the Notice, Defendant Managers have, at best, a *junior* security interest in the assets behind defendant First United Bank and Trust Co. **Exhibit K** is an example of the 105 letters sent to the payors.

18. Defendant First United Bank and Trust Co. claims an interest in the Hospital Assets and is made a defendant in order that this Court can determine the extent of its interest.

19. Because of these disputes, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities that exist among the parties

20. In light of the foregoing, immediate and irreparable injury, loss, and damage will result to the Plaintiff before the adverse party or the attorney for the adverse party can be heard in opposition to the request for a temporary restraining order. Therefore, a temporary restraining order is necessary to preserve the *status quo* until the Court hears Plaintiff's request for temporary injunction. Such relief is appropriate because Plaintiff is likely to prevail on the merits of Plaintiff's claim because the Defendant Managers do not have a first security interest in the Hospital Assets, and the Plaintiff has valid claims against the Defendant Managers.

21. The harm to Plaintiff if the requested temporary restraining order is not granted outweighs the harm to Defendant Managers if it is granted because seizure and sale of the Hospital Assets by Defendant Managers will cause irreparable harm to Plaintiff in that such actions would, among other things, prevent the Hospital from paying its employees and its vendors, which would result in (a) the employees terminating their the employment with the Hospital and seeking paying employment with other employees, (b) the vendors refusing to supply Hospital with supplies critical to its operation, (c) the Hospital being unable to properly care for its in-patients and emergency-room patients and consequently being subjected to liability for the lack of proper care, and (d) the Hospital shutting down and discontinuing all services, with virtually no hope of it ever reopening.

22. Plaintiff has no adequate remedy at law.

23. The interests of the public will be served by granting the requested orders because, due to the distance of other full-service hospitals from Pauls Valley, and due to the

fact that the Hospital operates the only ambulance service for much of Garvin County, even the temporary shut-down of the Hospital would jeopardize the lives of the citizens of (and visitors to) Pauls Valley and its environs.

24. Plaintiff believes that Defendant will continue to seek to seize and sell Hospital Assets if a temporary restraining order is not entered.

25. Plaintiff's new Hospital manager has already corrected many of the errors and omissions of the Defendant Managers and is well on the way to saving the Hospital from financial ruin, provided the Defendant Managers are prevented from completing their contemplated actions.

26. Plaintiff demands:
    a. A temporary restraining order, a temporary injunction and a permanent injunction (1) prohibiting Defendant Managers from proceeding with any seizure and sale of the Hospital Assets and ordering them to immediately remit to the Hospital any of the Hospital Assets received by them from the Hospital's payors, and (2) directing the Defendant Managers to notify the Hospital's payors to disregard the letters sent to them from the Defendant Managers;

    b. An accounting from the Defendant Managers as to all amounts alleged to be owed by Plaintiff to Defendant under the Contracts or in any other manner showing application of all payments made by Plaintiff to Defendant since the commencement of the Contracts;

    c. Declaratory Judgment as to the amount the court finds may be owing from one party to another;

    d. A determination of the extent and priorities of the parties' interests in the Hospital Assets;

    e. Attorney fees and costs as may be allowed by law or contract; and

    f. Such further legal and/or equitable relief as this court finds appropriate.

## Count 2

1. Plaintiff incorporates the allegations of Count 1.

2. The Defendant Managers have breached the Management Services Agreement, as amended. Due to the recency of the termination of Management Services Agreement, as amended, Plaintiff has not had sufficient time to completely analyze the performance of the Defendant Managers, but so far Plaintiff has uncovered evidence of the following breaches by the Defendant Managers:

    a. Failure to properly utilize an inventory management system for medical supplies.

    b. Failure to properly utilize an upfront co-pay or deductible policy

    c. Failure to ensure contract compliance by coding company.

    d. Failure to ensure contract compliance by billing company for Hospital and its EMS.

    e. Overstaffing of Hospital in light of patient volume.

    f. Failure to properly supervise staff.

    g. Failure to implement controls for verifying Hospital vendor eligibility and entering into contracts with unlicensed and/or unqualified vendors.

    h. Improper payment of Hospital employees.

    i. Failure to timely and fully submit billing data to billing company.

    j. Failure to provide adequate financial oversight, review financial statements and advise Plaintiff of Hospital's true financial condition.

    k. Failure to properly budget.

    l. Failure to advise Hospital board regarding financial policies and procedures.

    m. Lending money to employees without proper approval process.*

    n. Failure to comply with various government programs and causing the Hospital to suffer penalties in excess of $400,000.

3. As a result of the breaches of the Defendant Managers, the Plaintiff has suffered damages in excess of $2,000,000.

4. Plaintiff demands:

    a. Judgment jointly against the Defendant Managers for the amount of Plaintiff's damages;

    b. Attorney fees and costs as may be allowed by law or contract; and

    c. Such further relief as this court finds appropriate.

*These allegations are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Thus, the defendants seek to entirely shut off the flow of the very cash that is needed for the plaintiff to keep its hospital (the only public hospital in Garvin County) in operation, all the while

there is a substantial dispute as to whether the plaintiff is indebted to the defendants at all, in light of (a) the defendants' handling of the financial affairs of plaintiff and (b) the defendants' actions and omissions as summarized in Count 2 of the Petition (Doc. 1-1, which is quoted above). The defendants are responsible for much of the plaintiff's financial woes, and yet it is the defendants which now seek to effectively close the doors of the plaintiff's hospital, which is critical to the safety and lives of the citizens of Garvin County.

The defendants claim that their security interest is a first security interest, superior to the interests of all others. However, they ignore pertinent parts of the Uniform Commercial Code. "A security interest held by a bank with which a deposit account is maintained has priority over conflicting security interests held by other secured parties. 12A O.S.2001 § 1–9–327(3)." *Arvest Bank v. SpiritBank, N.A.*, 2008 OK CIV APP 55 at ¶ 28, 191 P.3d 1228, 1234-1235. Thus, plaintiff's depository bank (Pauls Valley National Bank[1]) "has priority over conflicting security interests held by other secured parties," including the defendants.

The plaintiff believes that, with its new management, the hospital's services (and therefore its income) will increase *if* the TRO remains in place. Furthermore, plaintiff's continued operation of its hospital generates additional receivables (*i.e.*, additional collateral) on a daily basis. However, the plaintiff cannot continue to operate the hospital when its income is intercepted.

Accordingly, the granting of the TRO by the District Court of Garvin County was entirely proper, and pursuant to Fed.R.Civ.P. 65(b)(2), the plaintiff moves for an extension of the TRO for a reasonable period of time to allow plaintiff's counsel to prepare and file a motion for a temporary injunction and for the Court to have an opportunity to consider all of the evidence in this case.

---

[1] Pauls Valley National Bank has not been named as a party to this action.

GARVIN AGEE CARLTON, P.C.

BY _____
Brett Agee, OBA #12547
brett.agee@gaclawyers.com
P.O. Box 10
Pauls Valley, OK  73075
405-238-1000
Fax: 405-238-1001
Attorneys for Plaintiff

### Certificate of Service

On September 10, 2018, a copy of the foregoing was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest entitled to notice as indicated below.

Ryan Leonard
Edinger, Leonard & Blakley, PLLC
100 Park Avenue, Suite 500
Oklahoma City, OK  73102

s/ Brett Agee